**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James H. HUNTER,**
**Defendant-Appellant.**

**No. 81–1144.**

United States Court of Appeals,
Tenth Circuit.

March 16, 1982.

John W. Ebert, Salt Lake Legal Defender Ass'n, Salt Lake City, Utah, for defendant-appellant.

Francis M. Wikstrom, U.S. Atty., Salt Lake City, Utah (Gordon Campbell, Asst. U.S. Atty., Salt Lake City, Utah, with him on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLO-WAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Defendant Hunter was convicted of aggravated bank robbery in violation of 18 U.S.C. § 2113(a) and (d). Although Hunter admitted robbing a Utah bank at gunpoint, he claimed his conduct was wholly the result of duress. Specifically, Hunter testified he involuntarily committed the crime following threats of violence against his fiancee. Hunter contended he was particularly susceptible to such threats because of his abuse of hallucinogenic drugs and alcohol.

On appeal, Hunter advances several arguments for reversal of the verdict below. Hunter contends the trial court erred by (1) denying his motion to transfer venue, (2) denying his motion for a polygraph examination, (3) admitting evidence of his prior criminal activity, (4) not requiring proof that his gun was loaded during the robbery, and (5) refusing to grant use immunity to one of his witnesses. We find each assertion meritless for the reasons detailed below.

## I.

### Venue Transfer

The standard of review applied to trial court determinations on venue transfer is firmly established. Change of venue in a criminal case is discretionary, and a trial judge's decision on the matter is entitled to deference. *United States v. Jobe*, 487 F.2d 268, 269–70 (10th Cir. 1973), *cert. denied*, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974). The facts must compel and not merely support venue transfer before an abuse of discretion will be found by an appellate court. *United States v. Calabrese*, 645 F.2d 1379, 1384 (10th Cir. 1981).

Criminal actions should normally be prosecuted "in [the] district in which the offense was committed." Fed.R.Crim.P. 18. Although Fed.R.Crim.P. 21(b)[1] permits courts to shift criminal proceedings to other districts, the factors germane to venue change such as the location of the defendant, the location of the witnesses, the location of the offense, and the expenses involved, support the trial judge's decision to keep this case in Utah. *See Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964). Hunter was incarcerated in Utah, the principal witnesses resided in Utah, and the offense charged was committed in Utah.

1. Rule 21(b) provides:
   "For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district."

Hunter opines that venue transfer was mandated in this case because his self-styled "key witness" lived in the Pacific Northwest. This argument is outweighed by the countervailing considerations outlined above. Moreover, the Government transported Hunter's witness to Utah at its own expense, thereby obviating any claim of improper venue based upon that witness' absence. Denial of Hunter's motion to transfer venue from Utah to Oregon was a proper exercise of the trial court's discretion.

## II.

### Polygraph Examination

■ The Tenth Circuit does not presently permit results from "lie detector" tests to be introduced into evidence. *United States v. Russo*, 527 F.2d 1051, 1059 (10th Cir. 1975), *cert. denied*, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 831 (1976). Before this court will consider accepting the results of such tests as evidence, a litigant will have to make a strong showing that polygraph examinations are widely perceived by the scientific community as having a reasonable measure of precision in their indications. *See United States v. Wainwright*, 413 F.2d 796, 803 (10th Cir. 1969), *cert. denied*, 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501 (1970). Hunter offered no facts indicating polygraph data has attained that stature. Therefore, his motion for a polygraph examination was correctly denied.

## III.

### Prior Crime Evidence

■ The trial court admitted into evidence facts suggesting Hunter's involvement in a prior bank robbery. Fed.R.Evid. 404(b) provides for the admission of evidence of previous criminal activity when offered to establish a defendant's motive or intention. Such evidence is not objectionable solely because it is unsupported by a conviction. *United States v. Parker*, 469 F.2d 884, 889 (10th Cir. 1972). This material is admissible "when its probative value outweighs the prejudice to a defendant re-

sulting from its admission." *United States v. Lucero*, 601 F.2d 1147, 1148 (10th Cir. 1979). The testimony of Hunter's girlfriend that Hunter told her about robbing a bank in Oregon was offered for the permissible purpose of establishing Hunter's motive. This evidence had substantial probative value in that regard because the earlier bank robbery was very close to the one at issue in point of time and in method of commission. *See United States v. Bridwell*, 583 F.2d 1135, 1140 (10th Cir. 1978). These facts tended to undermine Hunter's duress defense.

A trial judge has discretion to strike the balance between probative value and prejudice when ruling on the admissibility of past criminal conduct. *Lucero*, 601 F.2d at 1148–49. That discretion was not abused here.

## IV.

### Loaded Gun

■ The trial court instructed the jury that Hunter could be convicted of aggravated bank robbery under 18 U.S.C. § 2113(d) if he assaulted or put in jeopardy the life of a bank teller "by the use of a weapon that was objectively capable of inflicting bodily injury." Rec., vol. II, at 148. Hunter objects to the further instruction that "[i]f you find the Defendant flourished or otherwise displayed what appeared to be a gun to an employee in the course of robbing the bank, an inference may be drawn, if you think it reasonable in this case under these circumstances, that the gun was loaded and operable and a dangerous weapon." *Id.* Since Hunter took the stand and testified the gun was not loaded, he claims the inference permitted by this instruction was unwarranted.

It is true that aggravated bank robbery is predicated upon the defendant's use of a "dangerous weapon" to assault or jeopardize the life of his victim. 18 U.S.C. § 2113(a) and (d). However, this circuit has held that the apparent ability to cause such injury is sufficient if it places the victim in reasonable expectation of death or serious bodily injury. *United States v. Shannahan*, 605 F.2d 539, 541 (10th Cir.

1979). The jury was not improperly instructed.

## V.

### Judicial Grants of Use Immunity

Purportedly to support his defense of duress, Hunter called as a witness a woman who was present during the time Hunter claims one Ray Swanson threatened to harm him and his fiancee if he refused to rob the bank. The witness invoked the Fifth Amendment and refused to testify after the prosecution declined to grant her immunity from prosecution.

Hunter's motion for defense witness use immunity raises the issue of judicial power to fashion that protection. Virtually all jurisdictions recognize that use immunity is a creature of statute which can be conferred only by the Executive Branch of the government. *See, e.g., United States v. Richardson*, 588 F.2d 1235, 1241 (9th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979); *Ryan v. Commissioner*, 568 F.2d 531, 540 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978); *United States v. Graham*, 548 F.2d 1302, 1315 (8th Cir. 1977); *United States v. Leyva*, 513 F.2d 774, 776 (5th Cir. 1975); *In Re Lochiatto*, 497 F.2d 803, 804 n.2 (1st Cir. 1974); *In Re Kilgo*, 484 F.2d 1215, 1218 (4th Cir. 1973). *See generally United States v. Turkish*, 623 F.2d 769 (2d Cir. 1980). However, the Third Circuit held otherwise in *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir. 1980), concluding that under certain circumstances a court could immunize a witness despite the prosecution's refusal to do so. *Id.* at 966.

Hunter asks this court to adopt the *Virgin Islands* rationale and allow trial judges to confer use immunity on witnesses when necessary to provide defendants the full panoply of due process protections. He argues that his exculpatory witness asserted her Fifth Amendment guarantees because no immunity was offered by the prosecution. Hunter reasons he was precluded from adequately developing his duress defense as a result of this lack of corroborative testimony.

*Virgin Islands* outlines two techniques a court might employ if a prosecutor's refusal to grant witness use immunity handicaps a defendant's presentation of his case. The Third Circuit first notes that where the prosecutor's denial of immunity is a deliberate attempt to distort the fact finding process, a court could force the government to choose between conferring immunity or suffering acquittal. *Id.* at 968. The court then states that, even in the absence of prosecutorial misconduct, a court has the inherent authority to bestow use immunity upon a witness whose testimony is essential to an effective defense. *Id.* at 969.

We express no opinion on the first device discussed in *Virgin Islands* to force the prosecution to grant immunity inasmuch as no claim of prosecutorial misconduct has been made. However, we reject the second holding of that case and conclude that courts have no power to independently fashion witness use immunity under the guise of due process. We hold instead that "[t]he power to apply for immunity . . . is the sole prerogative of the government being confined to the United States Attorney and his superior officers." *Graham*, 548 F.2d at 1314.

AFFIRMED.