Kevin Charles PORTH, a/k/a Steven
Joseph Eger, Appellant
(Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 92–263.

Supreme Court of Wyoming.

Feb. 3, 1994.

Public Defender Program, Leonard D. Munker, State Public Defender, Deborah Cornia, Appellate Counsel, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Mary Beth Wolff, Asst. Atty. Gen., Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Appellant Kevin Porth was convicted by a jury for conspiracy to commit aggravated robbery pursuant to Wyo.Stat. §§ 6–2–401(c)(ii) and 6–1–303(a)(1988). He was sentenced to no less than seventeen years and no longer than twenty-five years at the state penitentiary. His appeal raises issues concerning co-conspirator testimony, warrantless arrest and sufficiency of evidence.

We affirm.

## ISSUES

Appellant presents the following issues on appeal:

I. Did the trial court err when it required a witness whom the trial court and prosecution knew would exercise his fifth amendment right to remain silent to take the stand and have the jury observe that invocation?

II. Did the prosecution's disclosure during trial that the co-conspirator had been adjudicated guilty for the same offense as appellant, constitute reversible error?

III. Did the trial court err when it ruled that the proposed testimony of the private investigator was inadmissible hearsay?

IV. Did the trial court err by refusing to grant witness immunity to a material defense witness?

V. Did the trial court err when it denied appellant's motion to suppress all evidence obtained after the warrantless arrest of the appellant when the arrest was made without probable cause?

VI. Was sufficient evidence produced at trial by the prosecutor to prove beyond a reasonable doubt all the elements of the crime of conspiracy to commit aggravated robbery?

The state rephrases the issues as:

I. Whether the trial court properly allowed the testimony of the co-conspirator, Troy Marker, and properly found Mr. Marker available as a witness?

II. Whether appellant's arrest was based on sufficient probable cause?

III. Whether sufficient evidence was presented to sustain appellant's conviction?

### FACTS

At about nine o'clock on the evening of May 26, 1992, two men wearing ski masks entered the Village Inn Restaurant in Laramie, Wyoming. One man carried a shotgun and the other carried a knife. Only two employees were in the restaurant at the time. Later, each described one of the men as large, muscular, with long dark hair which hung below the bottom of a dark ski mask, and wearing a dark t-shirt. Each described the other man as shorter, stout, also with long hair, wearing a yellow or orange ski mask and a reddish t-shirt.

The cashier was ordered by the larger robber to show him a safe located in the office. She was unable to open the safe and no money was taken. While the larger robber was in the office, the other robber warned the other employee not to go out the back door because she would be shot by another individual at the back door. The two men then took money from the cash register drawer and fled.

The police were called and a description was issued over the radio to officers in the area. Within minutes of the robbery, police were searching the area for two young-sounding, long-haired suspects armed with a sawed-off shotgun and a knife. The cashier reported that although it was raining heavily at the time, both robbers were dry. Neither employee heard nor saw a car either before the robbery or after the robbers fled.

The Travel Inn, a motel, is located next to the restaurant. There is a sidewalk from the motel to the front door of the restaurant which is protected by an awning. Since the robbers were dry and a car was not observed, the police contacted the manager of the motel and asked if anyone matching the robbers' general description was staying there. The manager confirmed that two young men matching the description had checked in at about 2:00 p.m. that day. Their registration card was signed Jim and Jesse James. It had an incomplete address and an incorrect car license number. The manager had corrected the license number and police confirmed it was registered to a Steven Eger, not to a James. Mr. Eger is also known as Kevin Porth.

The police went to the James' motel room and knocked. They observed someone look at them from the front window, but there was no answer. The police continued knocking for over fifteen minutes before two men emerged. The two were arrested immediately. One was not wearing a shirt and was permitted to reenter the room and put on a shirt. At that time police observed several knives. The men refused to permit a search, and officers closed the door to the room. A search warrant was obtained and executed.

Police recovered five knives, a sawed-off shotgun, shotgun shells, a green and black t-shirt, a purple shirt, a torn dark blue ski mask and a torn yellowish-orange ski mask, three gloves, a box of sunglasses, a driver's license and a birth certificate issued to a Mr. Porth, and a driver's license and a birth certificate issued to a Mr. Eger. Pieces of the ski masks were found in the toilet. A fingerprint was lifted from the chamber of the shotgun and later matched to Porth's fingerprints.

The two men were identified as Troy Marker and Kevin Porth a/k/a Steve Eger. Both men were charged with aggravated rob-

bery. This charge was later amended to conspiracy to commit aggravated robbery. Marker pleaded *nolo contendere* to the charge. Appellant proceeded to a jury trial and called Marker to testify that appellant had not been involved in the robbery.

Appellant's first four issues arise from the circumstances surrounding the testimony of his co-conspirator, Troy Marker. The day before trial appellant was informed that Marker would assert his Fifth Amendment privilege against self-incrimination if called as a witness because he had been advised his testimony could result in prosecution for the underlying aggravated robbery charge. Appellant requested that Marker's testimony be taken in court chambers out of the jury's presence. The prosecution objected, and the request was denied.

At trial, after the prosecution had presented its case, appellant then called Marker to the witness stand and although Marker asserted his Fifth Amendment privilege to almost all questions, he did answer four questions by appellant's defense counsel, his testimony being that appellant had not been involved in the robbery. Marker, however, did not relate all exculpatory testimony which he had previously told to a defense investigator. When cross-examined by the prosecution, Marker invoked his Fifth Amendment privilege.

Appellant requested that Marker be declared "unavailable" and the investigator's testimony be admitted under the hearsay exception of Wyo.R.Evid. 804(a)(5). The court found that Marker could not be declared unavailable since he had answered questions. Appellant had requested that the court grant Marker witness immunity. Observing that the court did not have this pow-

er, the court denied this request. Appellant was convicted and this appeal followed.

## DISCUSSION

### CO-CONSPIRATOR TESTIMONY

Appellant argues reversible error occurred when the trial court permitted Troy Marker to take the stand knowing the jury would observe Marker invoke his right to remain silent. Although it was appellant who called Mr. Marker, appellant now claims the prosecutor's cross-examination questions improperly prejudiced him by inviting the jury to draw adverse inferences from Marker's refusal to testify.

In support of this argument, appellant relies upon two United States Supreme Court opinions[1] and three opinions of this court.[2] These opinions are not particularly applicable to the issue at hand because they address a situation in which the prosecutor calls as a witness in his case-in-chief one who was involved with the accused in the criminal activity in question and who, the prosecutor knows, will invoke his right to remain silent. The evil of such prosecutorial conduct is that the jury will draw from the witness's refusal to testify adverse inferences that the witness and the accused are guilty. The issue at hand with which we are concerned, however, is not the same. Rather, here it was the accused's counsel, not the prosecutor, who knowingly called to the stand in the accused's case-in-chief the accused's associate to elicit favorable testimony that the accused was not involved in the criminal activity for which the associate had already been adjudged guilty.

■ Appellant claims that the application of the four criteria[3] identified in *Jones* requires a reversal of his conviction. We dis-

1. *Douglas v. State of Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); and *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).

2. *Jones v. State*, 777 P.2d 54 (Wyo.1989); *Prime v. State*, 767 P.2d 149 (Wyo.1989); and *Haselhuhn v. State*, 727 P.2d 280 (Wyo.1986), *cert. denied*, 479 U.S. 1098, 107 S.Ct. 1321, 94 L.Ed.2d 174.

3. *Jones* established these four criteria:

1) whether the prosecutor called the witness for the purpose of drawing adverse inferences from the witness's refusal to testify;
2) whether the prosecutor was certain that the witness could and, in fact, intended to invoke the Fifth Amendment privilege;
3) whether the prosecutor made further conscious use of any adverse inferences from the witness's refusal to testify in the presentation of his case; and
4) whether the use of those inferences added critical weight to the prosecution's case.
*Jones*, 777 P.2d at 58.

agree. The first criterion is whether the prosecutor called the witness so that the jury would draw the adverse inference of guilt from the witness's refusal to testify. Appellant ignores the essential feature of this factor, *viz.*, the prosecutor must call the witness. Here, appellant, not the prosecutor, called the witness. Since this essential feature is missing, the four-criteria analysis set forth in *Jones* need not be made here.

■ Although Wyoming has only addressed this issue when the prosecutor has called the witness, neither the state nor appellant discussed case law from other jurisdictions when the issue involved a defense witness who refused to testify. Our own research indicates some jurisdictions prohibit the defense from calling a witness the counsel knows will invoke the privilege. *People v. Dikeman*, 192 Colo. 1, 555 P.2d 519, 520 (1976); *People v. Myers*, 35 Ill.2d 311, 220 N.E.2d 297, 310–11 (1966), *cert. denied*, 385 U.S. 1019, 87 S.Ct. 752, 17 L.Ed.2d 557 (1967); *State v. Nunez*, 209 N.J.Super. 127, 506 A.2d 1295, 1298 (A.D.1986); *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865, 867 (1971); *Horner v. State*, 508 S.W.2d 371, 372 (Tex.Cr.App.1974). Other jurisdictions permit the defense to call these witnesses subject to the rules of relevancy—401 to 403. *People v. Dyer*, 140 Mich.App. 343, 364 N.W.2d 330, 333 (1985); *People v. Thomas*, 51 N.Y.2d 466, 434 N.Y.S.2d 941, 943–44, 415 N.E.2d 931, 933–34 (1980). All of the case law, however, is clear that the defense may not call a witness for the sole purpose of having the witness invoke his privilege against self-incrimination before a jury. There is little probative value in a witness's refusal to testify and a danger the jury will infer that it was the witness who committed the crime rather than the defendant. *Dikeman*, 555 P.2d at 520; *Nunez*, 506 A.2d at 1298; *People v. Patrk*, 191 A.D.2d 718, 595 N.Y.S.2d 798, 799 (1993).

■ We hold that the trial court has discretion to allow or disallow the defendant to call a witness to the stand who the court knows will invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury. *See United States v. Martin*, 526 F.2d 485, 487 (10th Cir.1975); and

*Patrk*, 595 N.Y.S.2d at 799. The accused's right to present his theory of the case is well established. The state's right to cross-examination is required for the accurate determination of guilt or innocence, and the scope of cross-examination is a matter within the discretion of the trial court. *Haworth v. State*, 840 P.2d 912, 917–18 (Wyo.1992); *see also Stauffer Chemical Co. v. Curry*, 778 P.2d 1083, 1102 (Wyo.1989). The parameters of cross-examination will not be disturbed on appeal unless there has been an abuse of discretion. *Loomer v. State*, 768 P.2d 1042, 1048 (Wyo.1989); *Amin v. State*, 695 P.2d 1021, 1027 (Wyo.1985). To show an abuse of discretion, the defendant must show how he was prejudiced by the abuse. *Id.*

■ As noted earlier, it was the accused who called Marker. When Marker refused to answer the first few questions by the accused, it was the prosecutor who objected and was overruled. Following this objection, defense counsel continued to ask Marker questions, and Marker did answer four questions which presented the defense's theory of the case:

Q. Mr. Marker, specifically was Kevin Porth involved in the robbery at the Village Inn?

A. No, he was not.

Q. Where was, if you know, Kevin Porth during the commission of the robbery at the Village Inn?

A. Refuse to answer that question.

Q. Do you know whether or not Kevin Porth has got problems with a knee?

A. Yes, I do.

Q. Could you describe, to the best of your ability, the ailment Kevin Porth has with his knee?

A. I don't know exactly. All I know is he is not able to really run, stuff like that. That's all I know. I don't know what happened to his knee or anything.

Q. Would that have been the case on May 26th of 1992?

A. Yes, it was.

At that point, Marker resumed refusing to answer questions. He declined to answer all

cross-examination questions by the prosecutor.

Appellant argues that under *Jones,* the content of the prosecutor's cross-examination questions was impermissible and constituted reversible error. However, we hold that, because the accused called Marker in his case-in-chief and Marker selectively answered questions which supported the defense's theory that Porth was not involved in the robbery, the trial court did not abuse its discretion in the cross-examination latitude it allowed the prosecution. The prosecution was entitled to cross-examine on the subject matter of the direct examination and matters affecting the credibility of the witness, and the court limited the cross-examination to its proper bounds. Wyo.R.Evid. 611(b).

■ Appellant also argues it was prejudicial and reversible error for the prosecutor to disclose during trial that the co-conspirator, Marker, had been adjudicated guilty for the same offense for which appellant was standing trial. Appellant relies on *Kwallek v. State,* 596 P.2d 1372 (Wyo.1979). The concern in *Kwallek* was whether a plea of guilty by another participant to a charge arising out of the same incident could be introduced as evidence of the defendant's guilt. This court in *Kwallek* held that it was error to permit the use of such evidence in the prosecution's case in chief because of its irrelevance, and that such error was prejudicial. *Kwallek* is distinguishable from this case, and we hold that no error was committed in allowing the testimony.

Defense counsel introduced Marker's co-conspirator status to the jury in his opening statement, referred again to Marker's co-conspirator status during direct examination, and elicited later testimony supporting appellant's defense that appellant was not involved in the robbery. However, appellant now argues that a single question by the prosecutor on cross-examination requires reversal. The prosecutor's single question was:

Q. Mr. Marker, are you a convicted felon, adjudicated felon in regard to a conspiracy offense that was committed at the Village Inn on May 26th, 1992?

A. I decline to answer that question.

■ Where the defense has invited the guilty plea testimony by its own introduction, there will only be reversible error if the prosecutor's use was not for the permissible limited evidentiary purpose of impeaching trial testimony or to reflect on a witness's credibility. *See United States v. Hernandez,* 921 F.2d 1569, 1582 (11th Cir.1991) *cert. denied,* —— U.S. ——, 111 S.Ct. 2271, 114 L.Ed.2d 722. The court should look to all of the facts and circumstances of the case in their proper context to determine whether the use is permissible. *Id.*

In this case, the co-conspirator was testifying for appellant, not against him. The defense informed the jury during opening statement that Marker had been sentenced and invited the admission of the plea during direct examination by asking Marker if he had also been charged in the case. In his closing argument, appellant summarized Marker's testimony and articulated how the jury should interpret it:

Troy Marker has been sentenced for this. You think if Kevin Porth was in on it with him he would want Kevin Porth to go with him. He wants to go, you know, have Kevin Porth to go to prison with him. Nope. He didn't take that approach. As short as his testimony was, I believe that * * * Troy Marker's testimony was credible.

The defense placed Marker's credibility in issue and invited the cross-examination testimony. The prosecutor questioned the witness for the proper purpose of impeachment. Wyo.R.Evid. 609. After its single question, the prosecutor did not refer again to the plea in further examination or summation. We conclude the prosecutor did not improperly attempt to use Marker's conviction as substantive evidence of appellant's guilt by emphasizing the matter or urging the jury to consider it. The prosecutor's single question upon cross-examination was proper and there was no error on this point. *Hernandez,* 921 F.2d at 1583; *and see United States v. Chilcote,* 724 F.2d 1498, 1503 (11th Cir.1984), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370; *State v. Fendler,* 127 Ariz. 464, 622 P.2d 23, 43 (App.1980), *cert. denied,* 452

U.S. 961, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981).

■ Appellant next claims that under Wyo.R.Evid. 801(d)(1)(B), Marker's prior consistent statements to a defense investigator should have been admitted as nonhearsay. Because appellant argued for admission under a different rule, Wyo.R.Evid. 103 requires this court to review whether the exclusion of this evidence was plain error which affected the substantial rights of appellant. *Auclair v. State,* 660 P.2d 1156, 1158–59 (Wyo.1983). This court has repeated plain error exists when:

1) The record is clear as to the incident which is alleged as error;

2) there was a transgression of a clear and unequivocal rule of law;

3) the party claiming the error proves that a substantial right has been denied to him; and

4) the denial of the substantial right materially prejudiced him.

*Auclair,* 660 P.2d at 1159 (citation omitted).

First, the record is clear as to the incident which is alleged as error because appellant's offer of proof reflects the nature of the excluded evidence. However, the second requirement is not met.

In pertinent part, Wyo.R.Evid. 801(d)(1) states:

(d) *Statements which are not hearsay.*—A statement is not hearsay if:

(1) Prior statement by witness—the declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is * * * (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *.

The language of the rule clearly requires a declarant to be subject to cross-examination. The United States Supreme Court has determined that a witness who asserts his privilege may not be subject to cross-examination as intended by the Federal Rules of Evidence:

Ordinarily a witness is regarded as "subject to cross-examination" when he is placed on the stand, under oath, and responds willingly to questions. Just as with the constitutional prohibitions, limitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross-examination within the intent of the Rule no longer exists.

*United States v. Owens,* 484 U.S. 554, 561–62, 108 S.Ct. 838, 844, 98 L.Ed.2d 951, 959 (1988). We agree with this analysis as applied to the Wyoming Rules of Evidence. Marker's refusal to respond to any cross-examination questions undermined this process to a degree which precluded meaningful cross-examination. He was not subject to cross-examination as required by Wyo. R.Evid. 801(d)(1) and the rule could not apply. There was not plain error.

■ Appellant next asserts that both the trial court and the prosecution had the inherent authority to grant witness immunity to Marker and the Sixth Amendment's compulsory process clause of the United States Constitution required that it be granted. In *Hall v. State,* 851 P.2d 1262 (Wyo.1993), this court determined that a prosecutor does not have authority to grant witness immunity unless he is specifically authorized by statute. *Id.* at 1266. The Wyoming legislature has authorized statutory immunity in a number of situations, but does not give the judiciary general authority to immunize witnesses. *Id.* Appellant does not. cite, and we do not find, authority holding that a Wyoming court has inherent authority to immunize. The grant or denial of witness immunity is a function of the executive branch of government. *Id.* at 1266, 1267.

Appellant's argument that a Sixth Amendment right to witness immunity exists is derived from United States Supreme Court cases which held that a defendant has a constitutional right to present evidence and his theory of the defense. He cites *Washington v. State of Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967); and *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Appellant relies on law review articles as authority for extending those cases as he suggests. Peter W. Tague, *The Fifth*

*Amendment: If an Aid to the Guilty Defendant, an Impediment to the Innocent One,* 78 Geo.L.J. 1 (1989); Note, *The Sixth Amendment Right to Have Use Immunity Granted to Defense Witnesses,* 91 Harv.L.Rev. 1266 (1978); Donald Koblitz, Note, *"The Public Has a Claim to Every Man's Evidence:" The Defendant's Constitutional Right to Witness Immunity,* 30 Stan.L.Rev. 1211 (1978).

Federal courts have considered, however, whether in the aftermath of *Kastigar* they have the inherent judicial power to grant immunity. *See United States v. Rocco,* 587 F.2d 144, 147–48 (3d Cir.1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979). The Tenth Circuit considered whether a constitutional due process right existed which empowered federal courts to grant immunity and concluded that most federal courts have uniformly rejected the argument. *United States v. Hunter,* 672 F.2d 815, 818 (10th Cir.1982). Our research indicates this conclusion remains accurate. *United States v. Capozzi,* 883 F.2d 608, 613–14 (8th Cir. 1989); *United States v. Herrera–Medina,* 853 F.2d 564, 568 (7th Cir.1988); *United States v. Tindle,* 808 F.2d 319, 325 n. 5 (4th Cir.1986), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (1989); *Mattheson v. King,* 751 F.2d 1432, 1443 (5th Cir. 1985); *United States v. Pennell,* 737 F.2d 521, 527 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *Hunter,* 672 F.2d at 818; *United States v. Turkish,* 623 F.2d 769 (2d Cir.1980); *United States v. Richardson,* 588 F.2d 1235, 1241 (9th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979), *cert. denied sub nom. United States v. Bradford,* 441 U.S. 931, 99 S.Ct. 2049, 60 L.Ed.2d 658 (1979). Absent extraordinary circumstances denying a defendant a fair trial, which are not presented here, we agree with *Hunter's* holding that there is no inherent judicial power to confer witness immunity because it is solely an executive function as legislatively authorized. *Hunter,* 672 F.2d at 818.

## WARRANTLESS ARREST

■ Appellant next contends the trial court erred in denying his motion to suppress evidence because his warrantless arrest was not based on sufficient probable cause. A peace officer's arrest without a warrant will be upheld upon review if the officer had reasonable probable cause based on the evidence in the record. *Roose v. State,* 759 P.2d 478, 481 (Wyo.1988).

■ In this case, the totality of the particular circumstances of the robbery and the collective knowledge of the involved officers constituted probable cause. *See Jandro v. State,* 781 P.2d 512, 518 (Wyo.1989); and *Williams v. State,* 557 P.2d 135, 137 (Wyo. 1976). It was mainly the officers' knowledge that the robbers were dry although a car was not seen or heard which led to the motel manager's information that a Jim and Jesse James had registered there. Their car was registered in a different name. Appellant and Marker then refused to answer the door although police had seen them looking out of the motel window and announced they were police officers. Appellant and Marker both matched the robbers' descriptions. This information was sufficient to cause a reasonably cautious or prudent police officer to believe that the two men had been involved in the armed robbery of the adjacent restaurant. There was no error.

## SUFFICIENT EVIDENCE

Appellant contends that a rational trier of fact could not have found guilt beyond a reasonable doubt without resorting to speculation and conjecture in his case. We have a well-established standard for reviewing whether a verdict is supported by sufficient evidence. We review the record to examine all of the evidence in the light most favorable to the state. *Burk v. State,* 848 P.2d 225, 235 (1993). This court then determines if any rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Wehr v. State,* 841 P.2d 104, 110 (Wyo.1992).

■ Appellant was charged with conspiracy to commit aggravated robbery in violation of Wyo.Stat. §§ 6–2–401(c)(ii) and 6–1–303(a). The elements of the crime of aggravated robbery are (1) if in the course of committing the crime of robbery the person (2) uses or exhibits a deadly weapon or a simulated deadly weapon. Wyo.Stat. § 6–2–

401(c)(ii). The elements for the crime of conspiracy are (1) an agreement with one or more persons that they or one or more of them will commit a crime and (2) one or more of them does an overt act to effect the objective of the agreement. *Burk,* 848 P.2d at 235. "Circumstantial evidence may be relied upon to establish a conspiracy due to the covert nature of the crime." *Wehr,* 841 P.2d at 110. A prima facie case of conspiracy is established by evidence of any overt act that establishes the criminal agreement was acted upon in some way. *Burk,* 848 P.2d at 235. The criminal agreement necessary for conspiracy is a mere tacit understanding. *Id.*

■ An examination of the conspiracy evidence against appellant shows sufficient evidence for the jury to rationally conclude he and Marker were co-conspirators in the aggravated robbery of the restaurant. The jury heard two eyewitnesses describe the robbers as armed with a shotgun and knife, wearing ski masks and t-shirts, and carrying a bag which they filled with money.

The robbers were dry despite a heavy rain, yet a car was not seen or heard. Police officers testified that information caused them to check with the manager of the motel which is next door to the restaurant. The manager told the police that two individuals meeting the general descriptions had checked in that day under the names Jesse and Jim James. The motel manager testified that the pictures taken at the police station the night of the robbery were accurate depictions of appellant and Marker's appearance at the time. She identified appellant as the individual who signed the registration card as "Jesse James."

The police testified that the manager's information caused them to go to the James' room and knock on the door. The two men who waited a considerable amount of time to come out of the room matched the general description of the robbers and were arrested. A knife which matched the description given by the eyewitnesses was plainly viewed during a protective sweep of the motel room. A later search of the room revealed a sawed-off shotgun, ski masks which had been cut up, knives, t-shirts and a bag.

From all of this evidence it is clear the jury could rationally conclude that appellant and Marker agreed to rob the restaurant and overtly acted to effectuate the agreement because the crime was completed.

The judgment and sentence is affirmed.