2003 WY 152

**Allen Marty ADAMS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–190.

Supreme Court of Wyoming.

Nov. 21, 2003.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellant Counsel. Argument by Mr. Roden.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General. Argument by Ms. Tibbetts.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] After trial, a jury convicted appellant Allen Marty Adams (Adams) of conspiracy to deliver a controlled substance, methamphetamine, in violation of Wyo. Stat. Ann. §§ 35–7–1042 and 35–7–1031(a)(i) (LexisNexis 2003) and delivery of a controlled substance, methamphetamine, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i).[1] Adams claims multiple errors arising from accomplice/co-conspirator testimony given at trial, that the evidence was insufficient to support his convictions, and prosecutorial misconduct. Upon review, we affirm.

## ISSUES

[¶ 2] Appellant sets forth the following issues on appeal:

1. Did the trial court err by failing to instruct the jury on the applicable law in Wyoming regarding accomplice/co-conspirator testimony, and by failing to give the jury a cautionary instruction regarding accomplice/co-conspirator testimony?

2. Did plain error occur when the trial court failed to instruct the jury on the law regarding accomplice/co-conspirator testi-

---

1. Wyo. Stat. Ann. § 35–7–1031(a)(i) provides, in applicable part:

> (a) Except as authorized by this act, it is unlawful for any person to ... deliver ... a controlled substance. Any person who violates this subsection with respect to:
>
> (i) Methamphetamine ... is guilty of a crime and upon conviction may be imprisoned for not more than twenty (20) years, or fined not more than twenty-five thousand dollars ($25,000.00), or both[.]

Wyo. Stat. Ann. § 35–7–1042 states:

> Any person who attempts or conspires to commit any offense under this article within the state of Wyoming or who conspires to commit an act beyond the state of Wyoming which if done in this state would be an offense punishable under this article, shall be punished by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense the commission of which was the object of the attempt or conspiracy.

mony, failed to either find as a matter of law that certain witnesses were accomplices/co-conspirators or submitting that question to the jury, and failed to give the jury a cautionary instruction regarding accomplice/co-conspirator testimony?

3. Did Appellant receive ineffective assistance of counsel when trial counsel failed to request the trial court to give the jury instructions regarding testimony of accomplices and co-conspirators?

4. Was the evidence insufficient to convict Appellant of conspiracy to deliver a controlled substance and delivery of a controlled substance?

5. Was there insufficient evidence to support Appellant's convictions for the crimes charged and stated in the jury instructions and verdict?

6. Did plain error occur when the state solicited testimony that Ben and Brooke Leibee and Jayme Hartmann were convicted of offenses arising out of the circumstances leading to Appellant's trial, thus depriving Appellant of his right to a fair trial on its own merits?

### FACTS

[¶ 3] On July 6, 2001, an amended information was filed alleging, in part, that between December of 1999 and June 27, 2001, Adams unlawfully conspired with Benjamin Tyson Leibee (Benjamin), Brooke Nichole Leibee (Brooke), Jayme Lynne Hartmann (Hartmann), and others to deliver methamphetamine and that Adams also unlawfully delivered methamphetamine to Benjamin in May of 2001. At trial, numerous witnesses testified, including both the Leibees, Hartmann, Leann Redfearn, Patrick Neuman, Amy Sundstrom, Diane Cherry, and Adams. Ultimately, the jury found Adams guilty of conspiring to deliver methamphetamine and delivery of methamphetamine as charged. This appeal followed.[2]

### STANDARD OF REVIEW

[¶ 4] We stated in *Black v. State*, 2002 WY 72, ¶¶ 4–7, 46 P.3d 298, ¶¶ 4–7 (Wyo.2002):

The standard of review for sufficiency of the evidence issues is well established. We assess whether all the evidence presented is adequate to form the basis for an inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We leave out of consideration the evidence presented by the unsuccessful party which conflicts with the successful party's evidence, and afford every favorable inference to the successful party's evidence which may be reasonably and fairly drawn from that evidence. Even though it is possible to draw other inferences from the evidence presented, the jury has the responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Vanvorst v. State*, 1 P.3d 1223, 1228 (Wyo.2000); *Harris v. State*, 933 P.2d 1114, 1123 (Wyo. 1997); *Blake v. State*, 933 P.2d 474, 480 (Wyo.1997).

It is also well established that a trial court has a duty to instruct a jury on the general principles of law applicable to the case at issue. A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found. Instructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation. *Ogden v. State*, 2001 WY 109, ¶ 8, 34 P.3d 271, ¶ 8 (Wyo. 2001); *Coburn v. State*, 2001 WY 30, ¶ 9, 20 P.3d 518, ¶ 9 (Wyo.2001); *Merchant v. State*, 4 P.3d 184, 190 (Wyo.2000).

Jury instructions shall not be ruled defective absent a showing that the instructions confused or misled the jury as to the proper principles of law and prejudiced the defendant. *Lane v. State*, 12 P.3d 1057,

---

2. Because Adams challenges the sufficiency of the evidence to convict him, additional facts will be set forth in the body of this opinion as necessary.

1061 (Wyo.2000). Prejudicial error must be demonstrated, and prejudice will not be demonstrated unless the instruction confused or misled the jury with respect to the proper principles of law. *Wilson v. State,* 14 P.3d 912, 916 (Wyo.2000). Further, a failure to instruct properly on an element of a crime does not constitute plain error where evidence of the defendant's guilt is overwhelming. *Id.*

Finally, this court will find that plain error exists when 1) the record is clear about the incident alleged as error, 2) there was a transgression of a clear and unequivocal rule of law, and 3) the party claiming error was denied a substantial right which materially prejudiced him. *Mazurek v. State,* 10 P.3d 531, 535 (Wyo. 2000); *Urrutia v. State,* 924 P.2d 965, 969 (Wyo.1996).

*See Vlahos v. State,* 2003 WY 103, ¶¶ 36 and 42, 75 P.3d 628, ¶¶ 36 and 42 (Wyo.2003).

## DISCUSSION

### Sufficiency of the Evidence

[¶ 5] Adams asserts that the evidence against him was insufficient because it came almost entirely from persons who could be characterized as accomplices/co-conspirators. Specifically, Adams maintains that a conviction cannot be founded upon the testimony of accomplices/co-conspirators unless that testimony is corroborated by other testimony presented at trial from a non-accomplice/non-conspirator.

[¶ 6] We recently addressed a very similar argument in *Vlahos.* Therein Vlahos claimed that the State relied exclusively on accomplice/co-conspirator testimony and such testimony was not sufficient to support a conviction for conspiracy under Wyoming law. Vlahos also alleged that, even if all the witnesses were not accomplices/co-conspirators, the only witness whose testimony connected him with acts in furtherance of the conspiracy was unquestionably an accomplice/co-conspirator. Thus, Vlahos argued that insufficient evidence existed to support the conviction without other witnesses to corroborate the accomplice/co-conspirator's testimony.

[¶ 7] In *Vlahos,* after this court clarified the distinctions between an accomplice and a co-conspirator, it stated:

Wyoming law is that a conviction may be had upon the unsupported testimony of an alleged accomplice. *Vigil v. State,* 926 P.2d 351, 360 (Wyo.1996). Thus, in Wyoming as well as in other states that follow the common law, no corroboration of accomplice testimony is required, and a conviction can be sustained on such testimony alone if it is convincing and credible. *Ostrowski v. State,* 665 P.2d 471, 487 (Wyo. 1983); *Filbert v. State,* 436 P.2d 959, 960 (Wyo.1968). Application of this principle to the present facts leads to the conclusion that no corroborating evidence was required if the witnesses Mr. Vlahos refers to can be properly characterized as accomplices.

¶ 28. This court then continued to make an in-depth analysis of both in-state, as well as out-of-state, case authorities dealing with co-conspirator testimony and held that independent evidence corroborating a conspiracy is not necessary when a coconspirator appears at trial and presents direct testimony of the conspiracy and the defendant's involvement therein. A coconspirator's in-court testimony is sufficient independent evidence to support a conspiracy conviction.

*Vlahos,* at ¶ 35. In reaching its conclusion this court cited as authority the case of *United States v. Szabo,* 789 F.2d 1484, 1487 (10th Cir.1986), which upheld a conspiracy conviction over the defendant's objection that it was based on co-conspirator testimony. In *Szabo,* at 1487 (quoting *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895)), the court stated:

There is no constitutional requirement that such testimony be examined for trustworthiness before being placed before the jury. Rather, the Confrontation Clause, in its optimum application, envisions: "[A] personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that

they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

Therefore, this court clarified that evidence corroborating the co-conspirator's statement is necessary when out-of-court statements of a co-conspirator are utilized. Conversely, when in-court statements of a co-conspirator are involved, independent evidence of the conspiracy is not required.

[¶ 8] Adams identifies both the Leibees and Hartmann as accomplices/co-conspirators. Given the applicable law set forth above and the fact that each gave direct testimony at trial, it is unnecessary for us to decide whether these individuals were accomplices or co-conspirators. Rather, we must simply address the specific question of whether Adams' convictions are supported by sufficient evidence.

[¶ 9] Sufficient evidence was presented to find that Adams committed each of the crimes alleged. Benjamin testified that he sold methamphetamine for Adams in Sheridan during the alleged time period. He explained that some drugs were sold through him as a go-between for Adams, and other drugs were sold when Adams met directly with the buyer. Benjamin stated that Adams usually arrived in Sheridan with the methamphetamine and stayed either with the Leibees at their residence or at either the Aspen Inn or Comfort Inn while the drugs were being sold. He also testified that Adams owned a scale and sometimes weighed and packaged the drugs at the Leibee residence. Benjamin stated that he received small quantities of methamphetamine for assisting in the selling and that Adams retained the monetary proceeds from the sales. Benjamin also identified the scale found when Adams and Hartmann were arrested as the scale owned by Adams. Benjamin further testified that Adams kept his methamphetamine and money in Adams' backpack and orange day timer.

[¶ 10] In addition, Benjamin claimed that he received methamphetamine from Adams in Gillette to sell and that he purchased methamphetamine from Adams for his personal use on several occasions. In particular,

Benjamin recounted that he personally purchased methamphetamine from Adams on one occasion in May of 2001 when Adams was staying at the Aspen Inn with Neuman and two females. Benjamin specified that Adams sold the drugs to him in the bathroom and supplied him with a syringe.

[¶ 11] Brooke testified that she used and sold methamphetamine in Sheridan for three to four years and that during this time frame she bought methamphetamine from Adams countless times. She further admitted to selling methamphetamine for Adams with Benjamin. Brooke stated that Adams came to Sheridan on a number of occasions in 2000 and 2001 for the purpose of selling methamphetamine and stayed with the Leibees at their residence or in a motel while doing so. Most of the time Adams would obtain a ride to Sheridan, and on a number of occasions she provided Adams with transportation for these trips from Gillette. Brooke also stated that although the methamphetamine was usually packaged when Adams arrived in Sheridan, she sometimes assisted Adams in weighing and packaging the methamphetamine at her home. Brooke also claimed that she gave the proceeds from the sales of methamphetamine to Adams and that Adams supplied her with methamphetamine as payment for her assistance. In addition, Brooke testified that Adams kept his methamphetamine, a digital scale, and money in a backpack and orange pouch/day timer. She similarly identified the scale found when Adams and Hartmann were arrested as being the scale owned by Adams.

[¶ 12] Furthermore, Brooke stated that she sold methamphetamine that she received from Adams to Cherry on several occasions. On one such occasion, Adams accompanied her to Cherry's residence and exchanged methamphetamine for Cherry's two stereo speakers. Brooke also recounted that she sold methamphetamine that she had received from Adams to Redfearn. She additionally stated that a sale of methamphetamine was accomplished at another time when she and Adams went to Redfearn's residence and Adams provided drugs to Ray Hahn, Redfearn's boyfriend.

[¶ 13] Cherry, Redfearn, Neuman, Hartmann, and Sundstrom each testified concerning their involvement with Adams. Cherry stated that she received methamphetamine from Brooke on several occasions in Sheridan during 2000 and 2001. She assumed that these drugs were supplied by Adams. She also recalled that on one occasion Adams waited for Brooke in the car when Brooke brought her methamphetamine. Cherry further admitted to buying eight ounces of methamphetamine from Adams between Christmas of 2000 and February of 2001 in Gillette and exchanging with Adams her two stereo speakers for methamphetamine.

[¶ 14] Redfearn testified that she received methamphetamine from Brooke and that Brooke usually telephoned her to advise that Adams was coming to town before Brooke would deliver the methamphetamine. She also recalled that Adams accompanied Brooke to her home and Adams had in his possession a brown bag with methamphetamine in it. Adams then went into a bedroom with her boyfriend, Hahn. Thereafter, Hahn exited the bedroom with methamphetamine in his possession. Redfearn also saw Adams in possession of a large amount of money on one occasion.

[¶ 15] Neuman stated that he stayed with Adams at the Aspen Inn in Sheridan for one night in May 2001 and that he and Adams used methamphetamine together. Later on that date, Benjamin and a friend came to see Adams. Neuman then recounted that Benjamin and Adams went into the bathroom and that Benjamin left soon thereafter. Neuman further stated that he had seen Adams with methamphetamine at the Leibee residence and that Adams shared that methamphetamine with him. He also remembered that Adams kept methamphetamine in his orange day timer.

[¶ 16] Hartmann admitted to using and selling methamphetamine and that on June 27, 2001, she and Adams attempted, without success, to locate some methamphetamine to sell. She stated that Adams had been staying with her at her home and that he had tried to sell her the scale found under the passenger seat of her vehicle where Adams had been sitting when they were arrested.

Hartmann stated that she got methamphetamine primarily from the Leibees but that Adams was the source of that methamphetamine. She also testified that Adams kept his money in an orange bag.

[¶ 17] Sundstrom indicated that she had seen Adams sell methamphetamine at the Leibee residence in June of 2001. She further stated that Adams possessed various quantities of pre-packaged methamphetamine during that time period. Sundstrom also testified that she observed Adams and Brooke weighing and packaging methamphetamine in Brooke's bedroom and selling it to whoever entered the room. Sundstrom also stated that Adams kept his methamphetamine, a scale, and money in his orange day timer, and that she recalled seeing a big "wad" of money in the day timer.

[¶ 18] Adequate evidence existed in this case for the jury to form the basis for a reasonable inference of guilt beyond a reasonable doubt when such evidence is viewed in the light most favorable to the State. As stated previously, we will not substitute our judgment for that of the jury; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Black v. State*, at ¶ 4. "We assume the jury duly considered all the testimony and gave it the weight to which it was entitled." *Vlahos*, at ¶ 41 (citing *Vargas v. State*, 963 P.2d 984, 991 (Wyo.1998)). We have further recognized that:

> The State satisfies its burden of proof in a conspiracy case involving controlled substances by proving beyond a reasonable doubt that: (1) there existed at least a tacit understanding between the defendant and a co-conspirator to commit an act violative of Wyoming's Controlled Substances Act; and (2) the defendant intended to commit the elements of the offense which was the object of the understanding. Circumstantial evidence may be relied upon to establish a conspiracy due to the covert nature of the crime.

*Urrutia v. State*, 924 P.2d 965, 969 (Wyo. 1996) (citing *Gilliam v. State*, 890 P.2d 1104, 1108 (Wyo.1995) and *Wehr v. State*, 841 P.2d

104, 110 (Wyo.1992)). The evidence outlined above satisfied both these elements in support of Adams' convictions.

[¶ 19] Adams further alleges that his convictions cannot be sustained under the principles espoused in *Bush v. State*, 908 P.2d 963 (Wyo.1995). *See also May v. State*, 2003 WY 14, 62 P.3d 574 (Wyo.2003); *Tanner v. State*, 2002 WY 170, 57 P.3d 1242 (Wyo.2002); *King v. State*, 2002 WY 27, 40 P.3d 700 (Wyo.2002); and *Cloman v. State*, 574 P.2d 410 (Wyo.1978). According to Adams, because the State failed to specify with whom each of the identified co-conspirators Adams conspired, i.e., the Leibees or Hartmann, and because the jury was not required to do so by way of a special verdict form, the State is required to provide sufficient evidence that Adams conspired with all of them. Adams also contends that his delivery conviction cannot stand because it is questionable whether the jury found that he delivered methamphetamine to Benjamin or Neuman in May of 2001.

[¶ 20] The same problem that existed in the above-cited cases, however, does not exist in this case. Here, the instructions given to the jury concerning the charges alleged do not contain alternative theories upon which a conviction could be based. Rather, the jury instruction given concerning the conspiracy charge stated:

> The elements of the crime of Conspiracy to Deliver a Controlled Substance, as charged in Count I are:
>
> 1. On or between December 1999 and June 27, 2001,
> 2. In Sheridan County, Wyoming[,]
> 3. The Defendant, Allen Marty Adams,
> 4. Agreed with *one or more persons* [,]
> 5. That they or one or more of them would commit the crime of delivery of a controlled substance, methamphetamine.

(Emphasis added.) Similarly, the jury instruction pertaining to the alleged crime of delivery provided:

> The elements of the crime of Delivery of a Controlled Substance, as charged in Count II are:
>
> 1. On or about the month of May, 2001[,]
> 2. In Sheridan County, Wyoming[,]
> 3. The Defendant, Allen Marty Adams,
> 4. Delivered a controlled substance, methamphetamine, *to another person.*

(Emphasis added.)

[¶ 21] *Bush* and its progeny do not require that the jury verdict be premised on a finding that Adams conspired with each of the Leibees and Hartmann just because they were all identified in the charging document. Rather, those cases require only that when two separate actions or theories of a crime are specified in the alternative that both of the actions or theories be supported by a sufficiency of the evidence. Here, the jury instruction given required that the jury find that Adams conspired with "another person." In any event, there was sufficient evidence presented at trial that Adams conspired with each of the Leibees and Hartmann.

[¶ 22] Likewise, *Bush* and subsequent cases do not mandate that Adams' delivery conviction be reversed based on his speculation regarding the basis for the verdict rendered. Adams' delivery conviction is sustainable so long as sufficient evidence was presented that he delivered methamphetamine "to another" in May of 2001. In this instance, the record evidences that the delivery charge surrounded Adams' delivery of methamphetamine to Benjamin. Therefore, it is unlikely that the jury's verdict was based on the jury's finding that Adams delivered methamphetamine to Neuman as Adams argues.

*Jury Instructions*

[¶ 23] Adams argues that the district court failed to properly instruct the jury on Wyoming law regarding accomplice/co-conspirator testimony. He asserts that error occurred when no instructions were given to the jury to inform it that a conspiracy cannot be proved solely by the testimony of a co-conspirator. Adams also contends that the jury must be instructed that accomplice/co-conspirator testimony must be viewed with caution and supported by corroborating evidence and that the witnesses constituting accomplices/co-conspirators of Adams must be identified for the jury.

Because defense counsel did not offer any such instructions or object to the proposed instructions, we review Adams' claims under the plain error standard.

[¶ 24] As stated previously, a conviction may be had upon the uncorroborated testimony of an accomplice if it is convincing and credible. In-court testimony of a co-conspirator is sufficient to sustain a conspiracy conviction. Given the status of the law concerning both accomplice testimony and the "in-court" testimony of co-conspirators, identification of the trial witnesses that were characterized as either accomplices or co-conspirators would serve no purpose. Therefore, the district court did not violate a clear and unequivocal rule of law by not instructing the jury in such a manner nor is Adams able to show that he was prejudiced. Adams, accordingly, has not established plain error in that regard. *See Vlahos v. State*, at ¶¶ 42–45.[3]

### Ineffective Assistance of Counsel

[¶ 25] Adams further contends that his defense counsel was ineffective for failing to request that the district court instruct the jury concerning accomplice/co-conspirator testimony. As noted above, the law does not require corroborating evidence of accomplice testimony or in-court co-conspirator testimony. Hence, Adams' claim of ineffective assistance of counsel is unpersuasive. *See Vlahos*, at ¶ 48.

### Statements of the Prosecution

[¶ 26] Finally, Adams asserts the prosecution committed plain error when it elicited testimony and thereafter inferred in closing argument that the Leibees and Hartmann had been convicted of offenses arising out of the same circumstances for which Adams had been charged. Thus Adams claims that the State improperly suggested that the jury could infer that Adams was guilty of the crimes alleged against him because an accomplice/co-conspirator of his was guilty. In support of this contention, Adams

cites the case of *Kwallek v. State*, 596 P.2d 1372 (Wyo.1979) and subsequent cases addressing the same subject.

[¶ 27] In *Urrutia v. State*, 924 P.2d at 969, we recognized:

Appellant relies upon *Kwallek v. State*, 596 P.2d 1372 (Wyo.1979), in making his argument that admitting his co-conspirators' testimony was a prejudicial error which mandates a reversal. In that case, this Court ruled that, "when two persons are indicted for separate offenses growing out of the same circumstances, the fact that one has pleaded guilty is inadmissible against the other." 596 P.2d at 1375. "[E]vidence of a witness' guilt for an offense which arose out of a circumstance leading to the defendant's trial implies that the defendant is also guilty. Such an implication violates a defendant's right to have a trial on its own merits." *Wells v. State*, 846 P.2d 589, 595 (Wyo.1992), *denial of habeas corpus aff'd sub. nom. Wells v. Shillinger*, 37 F.3d 1510 (10th Cir.1994). *See also Porth v. State*, 868 P.2d 236 (Wyo. 1994); *Grable v. State*, 601 P.2d 1001 (Wyo.1979). The defendant in *Kwallek* presented appropriate and timely objections to the testimony which was given about his co-conspirator's guilty plea. 596 P.2d at 1376. The Court determined that the trial court's admission of the guilty plea evidence amounted to a prejudicial error. *Id.*

[¶ 28] In this case, as was the case in *Urrutia*, Adams did not object to the statements by the prosecutor that he now claims were made in error. Applying a plain error analysis, review of the record reveals that Benjamin testified that he had been convicted of delivering marijuana after authorities conducted a controlled buy at his residence. Similarly, both Brooke and Hartmann testified that they had been convicted of delivering controlled substances. Brooke stated that she was convicted of delivering both marijuana and methamphetamine, while Hartmann testified she was convicted of de-

---

**3.** The district court did instruct the jury with respect to its evaluation of the general credibility of witnesses and the degree of weight the jury could give such testimony based upon the jury's

own independent evaluation of such testimony including truthfulness, bias, prejudice, and motive, along with each juror's knowledge, observations, and experiences in the affairs of life.

livering methamphetamine. The prosecutor then made comments concerning these circumstances during closing argument. Specifically, the prosecutor stated:

What makes sense? I'm going to ask you to use your common sense. I mean if what he's [Adam's] telling you is true, that everybody else is lying, then why would everybody else lie? The ones that are in jail, the ones that have been convicted said, I did something. I did it. Who did you do it with? Marty. Why would they do that?

. . .

And I talked a little bit in jury selection about my witnesses being drug dealers, drug users. . . . I hope you don't hold it against the State that some of my star witnesses are people that came in here in handcuffs. People that deal drugs, buy drugs are criminals. They are criminals. They are in jail. They are criminals. They are convicted felons. And Marty Adams was involved in it, and he is right along with them.

Therefore, it is clear that the first prong of the plain error test was satisfied. In addition, a clear and unequivocal rule of law was violated as *Kwallek* and its progeny dictate.

[¶ 29] However, Adams has not shown that he suffered material prejudice as a result of the statements made by the prosecutor. In applying the factors set forth in *Mazurek v. State*, 10 P.3d 531, 539 (Wyo. 2000), we do not recognize that the prosecutor's remarks had any significant tendency to mislead the jury and prejudice the accused.[4] Further, the prosecutor's remarks were not extensive. As we have already explained, substantial evidence existed for Adams' con-

victions. Additionally, we find that absent the remarks made by the prosecutor, the strength of the evidence used to establish Adams' guilt was substantial.

[¶ 30] We also recognize, as this court did in *Urrutia*, 924 P.2d at 970, that, because the jury's attention was not inordinately directed to the improper statements, this case is distinguishable from *Kwallek*. In *Kwallek*, the defendant was prejudiced, in part, because the trial court twice overruled the defendant's objections and the jury may have been improperly left with the intent of the judge by these rulings. Such did not occur in this case as no objections were made by Adams. *See also Black v. State*, at ¶¶ 44–45.

[¶ 31] Further, in this case the defense upon cross-examination questioned the Leibees about the circumstances surrounding their respective convictions in an effort to discredit their testimony. Indeed, Adams' trial strategy was to assert that it was the Leibees who sold methamphetamine and that Adams merely bought drugs from them for his own personal use. Adams further stated that he made trips to Sheridan primarily to see his girlfriend, Andrea Weber, a cousin of the Leibees, and to buy methamphetamine from the Leibees for his own personal use. In addition, Adams testified that he merely gave Benjamin a syringe in the bathroom in May of 2001 so that Benjamin could inject the methamphetamine that Benjamin had brought with him. Adams also claimed that he purchased the stereo speakers from Cherry for cash. Accordingly, it appears that the statements made by the prosecutor may have served, in actuality, to benefit Adams' de-

---

**4.** In *Mazurek*, at 539, this court, citing *United States v. Mitchell*, 1 F.3d 235, 241–42 (4th Cir. 1993), set forth several factors that must be considered in evaluating whether there was prejudicial plain error at the trial level. These factors are:

1) The degree to which the prosecutor's remarks have a tendency to mislead the jury and prejudice the accused;
2) Whether the remarks were isolated or extensive;
3) The strength of the competent proof to establish guilt, absent the remarks;
4) Whether the comments were deliberately placed before the jury to divert attention to extraneous matters;

5) The presence or absence of a limiting instruction;
6) Whether there was a proper purpose for introducing the conviction;
7) Whether the conviction was improperly emphasized;
8) Whether the conviction was used as substantive evidence of guilt;
9) Whether the error was invited by defense counsel;
10) Whether the failure to object could have been the result of tactical decisions; and
11) Whether, in light of all the evidence, the error was harmless.

fense and the theory proffered by him at trial. Therefore, additional support exists for our finding that plain error did not occur in this instance.

[¶ 32] Benjamin's conviction stemmed from the drug marijuana, while Brooke was convicted of delivering both marijuana and methamphetamine. Hartmann was convicted of delivering methamphetamine. However, no connection was ever established that these convictions even remotely stemmed from the same circumstances which acted as the foundation of the crimes alleged against Adams. Moreover, this court has recognized the principle that the State may properly introduce evidence of a witness' prior felony conviction on direct examination to lessen the sting of such an attack on cross-examination by the defense. *Gentry v. State,* 806 P.2d 1269, 1272 (Wyo. 1991).

[¶ 33] Thus, we hold that no plain error occurred with respect to the actions of the prosecutor when she elicited testimony and thereafter inferred in closing argument that the Leibees and Hartmann had been convicted of offenses arising out of the same circumstances for which Adams had been charged.

### CONCLUSION

[¶ 34] For the foregoing reasons, the convictions of Adams for conspiracy to deliver a controlled substance, methamphetamine, and delivery of a controlled substance, methamphetamine, are affirmed.