2002 WY 72

**Troy Dwayn BLACK, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 00–182.

Supreme Court of Wyoming.

May 14, 2002.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Assistant Appellate Counsel, Representing Appellant. Argument by Mr. Roden.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General, Representing Appellee. Argument by Ms. Baker.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

LEHMAN, Chief Justice.

[¶ 1] After trial, a jury convicted appellant Troy Dwayn Black of aggravated assault with a deadly weapon, aggravated robbery, aggravated burglary, and conspiracy to commit aggravated robbery. We affirm.

### ISSUES

[¶ 2] Appellant sets forth the issues on appeal:

I. Whether appellant's conviction for aggravated assault with a deadly weapon can

stand because insufficient evidence supports it?

II. Whether appellant's conviction for aggravated robbery can stand because insufficient evidence supports it?

III. Whether appellant's conviction for aggravated burglary can stand because insufficient evidence supports it?

IV. Whether the State's offer, and the admission of a witness' testimony, that she was convicted of an offense arising out of the circumstances leading to appellant's trial, and the State's continued use of such fact, violated appellant's right to have a trial on its own merits and constituted plain error?

V. Whether the district court violated appellant's right to the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Wyoming State Constitution when it instructed the jury regarding the law on aiding and abetting?

## FACTS

[¶ 3] On May 6, 1999, during a brief visitation with the victim Patrick Stone, appellant observed a quantity of cash in the apartment. That afternoon appellant, along with his cohorts, devised a plan to rob Mr. Stone. The group executed the robbery that night.

## STANDARD OF REVIEW

[¶ 4] The standard of review for sufficiency of the evidence issues is well established. We assess whether all the evidence presented is adequate to form the basis for an inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We leave out of consideration the evidence presented by the unsuccessful party which conflicts with the successful party's evidence, and afford every favorable inference to the successful party's evidence which may be reasonably and fairly drawn from that evidence. Even though it is possible to draw other inferences from the evidence presented, the jury has the responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a

quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Vanvorst v. State*, 1. P.3d 1223, 1228 (Wyo.2000); *Harris v. State*, 933 P.2d 1114, 1123 (Wyo. 1997); *Blake v. State*, 933 P.2d 474, 480 (Wyo.1997).

[¶ 5] It is also well established that a trial court has a duty to instruct a jury on the general principles of law applicable to the case at issue. A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found. Instructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation. *Ogden v. State*, 2001 WY 109, ¶ 8, 34 P.3d 271, ¶ 8 (Wyo.2001); *Coburn v. State*, 2001 WY 30, ¶ 9, 20 P.3d 518, ¶ 9 (Wyo.2001); *Merchant v. State*, 4 P.3d 184, 190 (Wyo. 2000).

[¶ 6] Jury instructions shall not be ruled defective absent a showing that the instructions confused or misled the jury as to the proper principles of law and prejudiced the defendant. *Lane v. State*, 12 P.3d 1057, 1061 (Wyo.2000). Prejudicial error must be demonstrated, and prejudice will not be demonstrated unless the instruction confused or misled the jury with respect to the proper principles of law. *Wilson v. State*, 14 P.3d 912, 916 (Wyo.2000). Further, a failure to instruct properly on an element of a crime does not constitute plain error where evidence of the defendant's guilt is overwhelming. *Id.*

[¶ 7] Finally, this court will find that plain error exists when 1) the record is clear about the incident alleged as error, 2) there was a transgression of a clear and unequivocal rule of law, and 3) the party claiming error was denied a substantial right which materially prejudiced him. *Mazurek v. State*, 10 P.3d 531, 535 (Wyo.2000); *Urrutia v. State*, 924 P.2d 965, 969 (Wyo.1996).

## DISCUSSION

### Sufficiency of the Evidence

[¶ 8] Appellant in his first three issues argues that insufficient evidence was pre-

sented at trial to convict him of aggravated assault with a deadly weapon, aggravated robbery, and aggravated burglary. Appellant contends that insufficient evidence was presented to prove beyond a reasonable doubt that 1) he threatened to use a drawn weapon on another person when not reasonably necessary in defense of his person, property, or abode or to prevent serious bodily injury to another; 2) in the course of committing a robbery he used or exhibited a deadly weapon or a simulated deadly weapon; or 3) he, in the course of committing a burglary, was armed with, or became armed with, or used a deadly weapon or a simulated deadly weapon, or knowingly or recklessly inflicted bodily injury on another person as required by Wyo. Stat. Ann. §§ 6–2–502, 6–2–401 and 6–3–301, respectively. Specifically, appellant asserts that it must be shown beyond a reasonable doubt that he personally took each of these required acts.

[¶ 9] Wyo. Stat. Ann. § 6–1–201 (LexisNexis 2001) provides:

(a) A person who knowingly aids and abets in the commission of a felony, or who counsels, encourages, hires, commands or procures a felony to be committed, is an accessory before the fact.

(b) An accessory before the fact:

(i) May be indicted, informed against, tried and convicted as if he were a principal;

(ii) May be indicted, informed against, tried and convicted either before of after and whether or not the principal offender is indicted, informed against, tried or convicted; and

(iii) Upon conviction, is subject to the same punishment and penalties as are prescribed by law for the punishment of the principal.

In *Hawkes v. State*, 626 P.2d 1041, 1043 (Wyo.1981), we long ago put to rest that since an aider and abettor is to be "informed against, tried and convicted in the same manner as if he were a principal," no distinction is made between aider and abettor and principal. Therefore, an aider and abettor is guilty of the principal crime with proof of participation in either capacity sufficient to convict a defendant as a principal. *Id.; see also Jahnke v. State*, 692 P.2d 911, 920–21 (Wyo.1984) and *Neilson v. State*, 599 P.2d 1326, 1335 (Wyo.1979).

[¶ 10] To convict a person of aiding and abetting, it must be proved that the crime was committed by someone and that the aider and abettor associated himself with and participated in the accomplishment and success of the criminal venture. *Fales v. State*, 908 P.2d 404, 408 (Wyo.1995); *Jones v. State*, 902 P.2d 686, 693 (Wyo.1995). We also held in *Edge v. State*, 647 P.2d 557, 560 (Wyo.1982), that it is not necessary to prove that each defendant did that which was necessary to establish each element of an offense but that it is sufficient to show that they were associated together in doing that which comprises each element of the offense. Further, although a defendant's presence at the time and place of the crime does not establish guilt as an aider, abettor, or principal, an intent to engage in the criminal venture may be shown by the relationship of the parties and by their conduct before and after the offense. *Haight v. State*, 654 P.2d 1232, 1238 (Wyo.1982).

[¶ 11] Sufficient evidence was presented that each of the crimes alleged were committed and that appellant, at minimum, acted as an aider and abettor by associating himself with and participating in the accomplishment and success of those criminal actions. Specifically, on May 6, 1999, appellant and his fiancé O'Neill drove to the apartment of Patrick Stone. Appellant introduced himself to Stone as "Snake"; and, during a brief conversation concerning appellant's attempt to locate a friend, appellant observed a quantity of cash Stone had just received in payment for a car he had recently sold. Stone's girlfriend, Porter, saw appellant ride away from the area in a red car, followed by a small white sports utility vehicle.

[¶ 12] When appellant returned to O'Neill's vehicle, he immediately stated that he was going to "jack that fool" because he had a lot of money laying around and he kept his door unlocked. Appellant and O'Neill then returned to their residence. Thereafter, appellant told his cohorts Jones and Soto at his residence that he wanted to go back to

Stone's apartment to rob him. Appellant, O'Neill, Jones, and Soto then went to Lee's residence.

[¶ 13] After appellant discussed the robbery with Lee, the group went to Stone's apartment around midnight with the intent of robbing Stone. Initially, appellant knocked on the door and entered the apartment alone. Appellant sat next to Stone on the couch. Also, present in the room were Porter, the three-year-old daughter of Stone and Porter, and Gilbert Vega, a tenant of the apartment. While appellant and Stone conversed, Vega went to the back of the apartment.

[¶ 14] A few minutes later, Lee and Jones burst into the apartment armed with a gun and a knife, respectively, with Lee pulling a mask down over his face and cocking the gun as he entered. Lee ordered Stone, Porter and their daughter to freeze and to get on the floor and not move, look, or talk. At the same time, Jones moved behind Porter and held the knife to her throat and pushed her into a recliner. Jones then told Porter to get on the floor, close her eyes and not look. Porter was then pushed to the floor by Jones, and Porter grabbed her daughter when this occurred.

[¶ 15] Jones then went to the back of the apartment and forced Vega face down to the floor and tied Vega's hands loosely with speaker wire. He advised Vega that he should close his eyes and keep quiet and he would not get hurt. Jones continued to hold Vega's hands.

[¶ 16] During the time that Jones handled Vega, Lee and appellant told Stone to get down. When Stone tried to comply by turning around and getting down on the couch, appellant and Stone grabbed him, pushing his face into the couch, with Lee getting on top of Stone and holding the gun to Stone's head. Appellant told Stone that if he moved or looked up he would be shot.

[¶ 17] Subsequently, when the daughter of Stone and Porter began to cry, Lee pointed the gun at Porter and their daughter and told Porter to shut their daughter up or he would shoot her daughter. Porter tried to quiet her daughter, but Lee told Porter to take her daughter to a back bedroom and she

complied. Vega felt Porter and her daughter move past him as they went to the back bedroom.

[¶ 18] Appellant and Lee then both asked Stone where the money was located. Porter overheard the two men making this request of Stone as she exited the room on her way to the back bedroom with her daughter. While Stone was being held down with his face in the couch, he was struck with the gun on a number of occasions in the back of the head. While this happened, appellant searched through a jacket that was worn by Stone and eventually removed from this jacket $530.00 in cash comprised of various bills. When attempting to accomplish this task, appellant ripped Stone's jacket.

[¶ 19] Stone was then told not to move, leave or tell anyone. The three assailants then left the apartment together; and the three, along with O'Neill and Soto, went in O'Neill's car and the small white sports utility vehicle to Lee's residence to celebrate. The men were thrilled and excited, commenting that the people in the house went crazy when they pulled out the gun.

[¶ 20] Immediately after the men left, Stone observed a red car followed by a small white sports utility vehicle exit the area of the apartment. Stone then dialed 911 to report the crime and went to check on Porter, his daughter, and Vega. At that time, Porter noticed Stone was bleeding from the back of his head.

[¶ 21] When the police arrived to investigate, Stone was treated for his injuries. Stone identified both appellant and Jones from a photo lineup. He further described appellant as having some darkening of the skin or a tattoo above his left eye. In addition, Stone assisted the police by inquiring from an acquaintance where appellant lived. It was also noted that blood was on Stone's jacket as a result of him being hit with the gun.

[¶ 22] Stone further advised the police during their investigation that he had previously seen the red vehicle he observed leaving his apartment after the crime and that it had a broken windshield. Thereafter, O'Neill confirmed that the broken windshield

on her vehicle was just recently repaired. The police later confirmed Stone's sale of his automobile and receipt of $500.00 on the date in question and that a small white utility vehicle was owned by Soto.

[¶ 23] Additionally, Stone indicated that the money stolen from him was comprised of 100, 50, and other smaller denominations of bills and that some of the bills had distinctive marks on them. Specifically, Stone stated that some of the $100 bills were of the "newer" type bill, and that some of the bills had light blue, almost fluorescent ink, bingo Dauber stamps on them.

[¶ 24] Later, appellant attempted to hide in a cellar to evade police officers to prevent his arrest. When he was arrested, appellant was initially found to have cash in the amount of $490 on his person. Another officer also found an additional $300.00 in cash on appellant later when he was questioned. At trial, although Stone had never previously seen either of the amounts of money taken from appellant after his arrest, Stone was able to identify that this money was the money stolen from him because a $10 bill had the distinctive light blue, almost fluorescent ink, bingo Dauber stamp on it as he had previously described and the hundreds consisted of some of the "newer" type bills.

[¶ 25] When appellant was questioned after his arrest and upon being given a *Miranda* warning, he initially said he knew nothing. However, when he was confronted with his identification surrounding the incident, he admitted that he was at Stone's apartment when the events occurred. Nevertheless, Stone stated that he was present in the apartment to purchase drugs when two men entered the apartment with a gun and a knife and began to yell and threaten Stone and Porter. Appellant then explained that in the confusion he was able to leave undetected by these men.

[¶ 26] Subsequently, appellant positively identified Lee and Jones and stated that they were his friends. He also said that he had seen Lee with a gun a few weeks earlier at a party. He further advised the police that Lee was wearing a beanie when he entered Stone's apartment. Moreover, a police officer advised appellant that he thought that he,

Jones and Lee decided they were going to go over and rip off Stone with the intent that appellant would attempt to buy drugs and get Stone to bring as many drugs as possible, then Jones and Lee would enter with a knife and gun wherein appellant would control Stone and they would take his money and drugs and get out of there. In response to this scenario, appellant stated, "You done a pretty good job figuring this out, but I never had no gun." Further, during his interview by police, appellant referred to a robbery as "jacking somebody." When Jones was detained for questioning with respect to the above-described events he was found to have a knife in his possession.

[¶ 27] As such, adequate evidence existed in this case for the jury to form the basis for an inference of guilt beyond a reasonable doubt when such evidence is viewed in the light most favorable to the State as required. We will not substitute our judgment for that of the jury; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Vanvorst v. State,* 1 P.3d at 1228; *see also Blake v. State,* 933 P.2d at 480 and *Harris v. State,* 933 P.2d at 1123.

### Jury Instruction

[¶ 28] Appellant argues that since he was not specifically charged as an accessory before the fact under § 6–1–201, the trial court improperly instructed the jury on the law of aiding and abetting and thereby violated appellant's constitutional rights under both the United States and Wyoming Constitutions. We do not agree.

[¶ 29] As previously noted, since § 6–1–201 provides that an aider and abettor is to be informed against, tried, and convicted in the same manner as if he were a principal, no distinction is made between an aider and abettor and principal. Hence, an aider and abettor is guilty of the principal crime. Proof of participation in either capacity is sufficient to convict a defendant as a principal, and it is not necessary that the information refer to the aiding and abetting

statute. *Hawkes v. State,* 626 P.2d at 1043; *Neilson v. State,* 599 P.2d at 1335.

[¶ 30] We find the information in this case sufficient to support defendant's conviction. As we noted in *Hawkes,* it may be better practice to have an information contain a reference to the aiding and abetting statute if it appears that the accused may have acted as an accessory rather a principal. The trial judge, however, did not err in instructing the jury as to the crime of aiding and abetting because proof of participation as an aider and abettor is sufficient to support a conviction as a principal.

[¶ 31] Further in support of our conclusion, we recognize, as we did in *Neilson,* that appellant could have requested to be furnished with a bill of particulars setting forth the precise theories under which the State would prosecute the charges asserted against him. In addition, and perhaps most importantly, the State filed a Notice of Intent specifically putting appellant on notice that the State would rely on those theories to the extent necessary of co-defendant liability, aider and abettor theory, and Pinkerton [1] liability, as well as liability as a principal in each of the charged offenses.

[¶ 32] As this court indicated in *Hawkes,* 626 P.2d at 1043, in comparing the facts of *Neilson v. State,* 599 P.2d 1326 (Wyo.1979), to that case:

Defendant's case is even weaker than that in *Neilson, supra,* since defendant had actual notice of the State's theory as set out in the bill of particulars. Admittedly, a bill of particulars is not a part of the information and does not change the offense charged; however, it does make the general allegations more specific, which allows the defendant an opportunity to better prepare his case.

[¶ 33] Here, we similarly hold that while the Notice of Intent is not a part of the information and does not change the offenses charged, it did give appellant actual and explicit notice of the possible theories that the State would rely upon which allowed appellant a better opportunity to better prepare his case. *See Hawkes,* at 1043–44 and those cases cited therein.

### Statements of the Prosecution

[¶ 34] Finally, appellant asserts comments made by the State during the trial regarding O'Neill's participation in the crimes and her reaching a plea agreement wherein she pled guilty to conspiracy to commit robbery, precluded appellant from being afforded a fair trial. In particular, appellant argues statements made by the prosecutor during voir dire, during the testimony of O'Neill and Detective Jones, and in closing argument were inappropriately allowed. In support of this contention, appellant cites the cases of *Kwallek v. State,* 596 P.2d 1372, 1375–76 (Wyo.1979) and *Urrutia v. State,* 924 P.2d 965, 969 (Wyo.1996) (citing *Wells v. State,* 846 P.2d 589, 595 (Wyo.1992)).

[¶ 35] In *Urrutia,* at 969, we recognized:

Appellant relies upon *Kwallek v. State,* 596 P.2d 1372 (Wyo.1979), in making his argument that admitting his co-conspirators' testimony was a prejudicial error which mandates a reversal. In that case, this Court ruled that, "when two persons are indicted for separate offenses growing out of the same circumstance, the fact that one has pleaded guilty is inadmissible against the other." 596 P.2d at 1375. "[E]vidence of a witness' guilt for an offense which arose out of a circumstance leading to the defendant's trial implies that the defendant is also guilty. Such an implication violates a defendant's right to have a trial on its own merits." *Wells v. State,* 846 P.2d 589, 595 (Wyo.1992), *denial of habeas corpus aff'd. sub nom. Wells v. Shillinger,* 37 F.3d 1510 (10th Cir.1994). *See also Porth v. State,* 868 P.2d 236 (Wyo. 1994); *Grable v. State,* 601 P.2d 1001 (Wyo.1979). The defendant in *Kwallek* presented appropriate and timely objections to the testimony which was given about his co-conspirator's guilty plea. 596 P.2d at 1376. The Court determined that

---

1. "The doctrine imposing liability on a conspirator for all offenses committed in furtherance of the conspiracy, even if those offenses are actually performed by coconspirators. *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)." Black's Law Dictionary at 1168 (7th ed.1999).

the trial court's admission of the guilty plea evidence amounted to a prejudicial error. *Id.*

[¶ 36]  We have also made clear that when a defendant raises no objection at trial we must consider such claims under a plain error standard of review.

Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him. *Yetter v. State*, 987 P.2d 666, 668 (Wyo. 1999) (quoting *Sandy v. State*, 870 P.2d 352, 358 (Wyo.1994)); *see also Mora v. State*, 984 P.2d 477, 480 (Wyo.1999).

*Mazurek v. State*, 10 P.3d 531, 535 (Wyo. 2000). *See also Capshaw v. State*, 11 P.3d 905, 913 (Wyo.2000).

[¶ 37]  In this case, as was the case in both *Mazurek* and *Urrutia*, appellant did not object to the statements made by the prosecutor of which he complains.  In *Mazurek*, at 539, this court, citing *United States v. Mitchell*, 1 F.3d 235, 241–42 (4th Cir.1993), set forth several factors that must also be considered in evaluating whether there was prejudicial plain error at the trial level.  These factors are:

1) The degree to which the prosecutor's remarks have a tendency to mislead the jury and prejudice the accused;

2) Whether the remarks were isolated or extensive;

3) The strength of the competent proof to establish guilt, absent the remarks;

4) Whether the comments were deliberately placed before the jury to divert attention to extraneous matters;

5) The presence or absence of a limiting instruction;

6) Whether there was a proper purpose for introducing the conviction;

7) Whether the conviction was improperly emphasized;

8) Whether the conviction was used as substantive evidence of guilt;

9) Whether the error was invited by defense counsel;

10) Whether the failure to object could have been the result of tactical decisions; and

11) Whether, in light of all the evidence, the error was harmless.

[¶ 38]  The prosecutor stated during voir dire:

Now, as you heard, we have multiple people involved here.  We have accused not only three men involved in the actions, but two young ladies who provided transportation and who talked about this beforehand.

It's probably not very surprising that at least one of these persons out of five decided to talk to the police when they were picked up.  We anticipate that the young lady named Dawn O'Neill will testify, and she is actually an accomplice in the case.

Now the law says accomplice testimony alone is enough to convict, and we're going to have a lot more than that.  But is there anybody here who would throw her testimony out in whole just because she's also been implicated in this thing?

. . .

She is not testifying out of the goodness of her heart.  She has reached an agreement concerning her charges.

[¶ 39]  The following transpired during the testimony of O'Neill and Detective Jones, respectively:

Q:  Did you give him a taped statement about what you knew about this offense at the time?

A:  Yes, I did.

Q:  And your testimony here today is a result of a plea agreement?

A:  Yes, it is.

Q:  Okay. Did you give the same information to the police before you had the plea agreement?

A:  Yes, I did.

Q:  On May 8, 1999, did you speak to Ms. O'Neill, the witness who has just testified?

A:  Yes, I did.

Q:  At this time, she was a suspect in the matter?

A:  Yes, she was.

. . .

Q: Now, at that time, had she been made any promises of any sort?

A: None whatsoever.

Q: Had she entered this plea agreement at that time?

A: No she had not.

[¶ 40] Finally, the prosecutor stated during his closing argument:

Finally, we want to look at—when a codefendant says something, your first reaction is to be a little bit skeptical.

. . .

Now, did she get a little bit of a deal? Yeah, she did, and not an unreasonable one and none of that changes the same statement she gave before the deal.

. . .

He says, and I can say, "I was an innocent bystander." If we are to believe him, he is even less culpable than Dawn O'Neill in this situation.

It is clear that the first prong of the plain error test was satisfied. In addition, a clear and unequivocal rule of law was violated as *Kwallek* and its progeny dictate.

[¶ 41] Appellant, however, has not shown that he suffered material prejudice as a result of the statements made by the prosecutor. In applying those factors set forth in *Mazurek*, 10 P.3d at 539, we do not recognize that the prosecutor's remarks had any significant tendency to mislead the jury and prejudice the accused. Further, the prosecutor's remarks were not extensive. As we have already explained, substantial evidence existed for the convictions of appellant. Indeed, even disregarding the testimony of O'Neill, who testified of events which occurred both before and after the main event, we find that substantial evidence existed for these convictions. Additionally, we find that the strength of the competent proof to establish appellant's guilt was substantial, absent any of the remarks made by the prosecutor.

[¶ 42] We also cannot conclude upon our review that the comments made by the prosecutor were deliberately placed before the jury to divert attention to extraneous matters. We further note, as this court did in *Urrutia*, 924 P.2d at 970, that, because the jury's attention was not inordinately directed

to the improper statements, this case is distinguishable from *Kwallek*. In *Kwallek*, the defendant was prejudiced because the trial court twice overruled the defendant's objections and the jury may have been improperly left with the intent of the judge by these rulings. Obviously, that did not occur in this case, as no objections were made by appellant.

[¶ 43] A limiting instruction was given to the jury in this case which minimized the statements of the prosecutor and any testimony given directly by O'Neill. Moreover, there does not appear to be an improper purpose for introducing the conviction of O'Neill nor was it improperly emphasized. O'Neill's conviction was also not used as substantive evidence of appellant's guilt.

[¶ 44] Additionally, we conclude the asserted error of appellant may have been, at least in part, invited by his defense counsel. It is likely that the failure to object could have been the result of tactical decisions of that counsel. In this case the defense questioned O'Neill further about the circumstances surrounding her testimony upon cross-examination in an effort to discredit her testimony. Specifically, the following occurred:

Q: Again, Ms. O'Neill, [the prosecutor] stated the fact that you had a plea agreement with the State; is that correct?

A: Yes, that is.

Q: And you—you have been charged in this crime; is that correct?

A: That is correct.

Q: And your agreement is that you plead Conspiracy to Simple Robbery?

A: Yes.

Q: In exchange for that, you agreed to testify and cooperate with them; is that correct?

A: Yes, that is.

Q: Your agreement included that there would be no pen time asked if you had prior no felonies; is that correct?

A: Correct.

Q: But all other sentencing options are open?

A: Yes, they are.

Q: So you have a possibility then of C.A.C. time or county jail time; is that correct?

A: That is correct.

[¶ 45] This court recognizes that appellant's sole trial strategy was to assert that only Lee and Jones were involved in the criminal acts that occurred and that appellant just happened to be within Stone's apartment when these acts were initiated, that O'Neill did not witness any of the actions within Stone's apartment, and that she had entered into a plea agreement in return for her testimony implicating appellant. Accordingly, it appears that the statements made by the prosecutor may have served, in actuality, to benefit appellant in the theory proffered by him at trial.

[¶ 46] Finally, upon review of all the evidence presented, we conclude that the error asserted by appellant was harmless. Therefore, more than adequate support exists for our holding that plain error did not occur in this instance.

### CONCLUSION

[¶ 47] For the foregoing reasons, the convictions of appellant for aggravated assault with a deadly weapon, aggravated robbery, aggravated burglary, and conspiracy to commit aggravated robbery are affirmed.

VOIGT, Justice, dissenting.

[¶ 48] I respectfully dissent. The appellant's convictions for aggravated assault with a deadly weapon, aggravated robbery, and aggravated burglary should be reversed because the jury was not adequately instructed as to the findings it had to make beyond a reasonable doubt in order to find the appellant guilty. As a result, we cannot have confidence in the verdict because we do not know if the jury made those findings.

[¶ 49] The issue that requires reversal of the appellant's convictions grows out of the language of Wyoming's accessory before the fact statute, Wyo. Stat. Ann. § 6–1–201 (LexisNexis 2001):

(a) A person who knowingly aids or abets in the commission of a felony, or who counsels, encourages, hires, commands or procures a felony to be committed, is an accessory before the fact.

(b) An accessory before the fact:

(i) May be indicted, informed against, tried and convicted as if he were a principal;

(ii) May be indicted, informed against, tried and convicted either before or after and whether or not the principal offender is indicted, informed against, tried or convicted; and

(iii) Upon conviction, is subject to the same punishment and penalties as are prescribed by law for the punishment of the principal.

The specific problem is created by subsection (b)(i)—what does it mean to be "informed against, tried and convicted" as if a principal? In particular, how can a defendant be tried as a principal if the facts suggest he acted, if at all, as an accessory? [1]

[¶ 50] The appellant posits his argument as follows: (1) he was charged as a principal; (2) he had no notice he would be tried as an accessory; (3) the lack of notice violated his constitutional right to know the nature and cause of the accusation; and (4) there was insufficient evidence to convict him as a principal. I would reverse, despite the fact that the record does not fully substantiate this argument. It is true that neither the original information nor the two amended informations contained any accessory language or mentioned Wyo. Stat. Ann. § 6–1–201. We have previously held, however, that "it is not necessary that the information refer to the aiding and abetting statute," because proof of a defendant's participation in the crime as an aider and abettor is sufficient to convict him

---

1. For a brief analysis of the role of this statute in abrogating the common law distinctions between principals and accessories, see *Jahnke v. State,* 692 P.2d 911, 920–21 (Wyo.1984). *Jahnke* suggests the following legislative intent:

   The result is that differences in the manner of participation by the parties to the commission

of a felony do not affect their individual culpability for the crime. Each, whether he is the principal, an aider and abettor, or an accessory before the fact, is treated as a principal *for purposes of punishment.*

*Id.* at 921 (emphasis added).

of the principal crime. *Hawkes v. State*, 626 P.2d 1041, 1043 (Wyo.1981). Beyond that, nearly a month before trial in this case, the State filed and served on defense counsel a Notice of Intent which reads as follows:

COMES NOW, the State of Wyoming, by and through its undersigned attorney, and gives the Defendant notice, as it has at preliminary hearing, that the State will rely on the extent necessary on theories of co-defendant liability, aider and abett[o]r theory and Pinkerton liability under the conspiracy charges; as well as any liability as a principal in each of the charged offenses in the above-captioned matter.

[¶ 51] Admittedly, the language of this notice is less than precise, but it was sufficient to apprise the appellant of the State's aiding and abetting theory. Further, the probable cause affidavit attached to the original information clearly detailed the suspected roles of the appellant and his accomplices. And finally, although no transcript of such is included in the record, the appellant was afforded a preliminary hearing in the circuit court where, we may presume, he was further informed as to the factual allegations.

[¶ 52] It is not enough to say that an accessory before the fact may be tried as a principal or that the appellant knew that he would have to defend against the accusation that he acted as an accessory before the fact. We must inquire whether the jury was sufficiently instructed as to how to apply the law to the facts. A person who has not committed the acts of a principal may not be found guilty of the principal crime, under an aiding and abetting theory, unless the jury finds that the State has proved beyond a reasonable doubt that the person knowingly aided or abetted in the commission of a felony, or counseled, encouraged, hired, commanded or procured a felony to be committed.

[¶ 53] Accessory before the fact is a separate and distinct offense from that of the principal crime. *Linn v. State*, 505 P.2d 1270, 1275 (Wyo.), *cert. denied*, 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 959 (1973); *Goldsmith v. Cheney*, 447 F.2d 624, 627 (10th Cir.1971). Consequently, the State must

prove not just that someone committed the principal crime, but that the defendant " 'associated himself with and participated in the accomplishment and success of the criminal venture.' " *Fales v. State*, 908 P.2d 404, 408 (Wyo.1995) (*quoting Jones v. State*, 902 P.2d 686–693 (Wyo.1995)). *See also Haight v. State*, 654 P.2d 1232, 1238 (Wyo.1982). What that means is the State must prove beyond a reasonable doubt the elements of the statutory crime of accessory before the fact.

[¶ 54] Wyoming has three pattern jury instructions (W.Cr.P.J.I.) covering accessory before the fact. The district court gave one of those instructions, but omitted the other two. Instruction No. 18 was based on W.Cr. P.J.I. 7.01A:

It is not necessary that the defendant personally did every act necessary to constitute the crime of Aggravated Robbery and Aggravated Burglary. It is enough if, acting with the intention that the crime be committed, he knowingly aided and abetted someone else to commit the crime of Aggravated Robbery and Aggravated Burglary or that he counseled, encouraged, hired, commanded or procured some other person to commit the crime of Aggravated Robbery and Aggravated Burglary and the crime was attempted or committed.[2]

In addition, Instruction No. 19 recited for the jury the language of Wyo. Stat. Ann. § 6-1-201:

You are instructed that pertinent portions of the Wyoming Statutes provide as follows:

a. A person who knowingly aids or abets in the commission of a felony, or who counsels, encourages, hires, commands or procures a felony to be committed, is an accessory before the fact.

b. An accessory before the fact:

i. May be indicted, informed against, tried and convicted as if he were a principal.

Finally, Instruction No. 20 defined "principal:"

---

**2.** This instruction, in and of itself, may have created reversible error because it lists only ag-

gravated robbery and aggravated burglary, leaving out aggravated assault with a deadly weapon.

A principal is a person involved in the commission of a felony who directly and actively commits the act constituting the crime.

[¶ 55] The district court did not, however, give W.Cr.P.J.I. 7.01B or 7.01C. W.Cr.P.J.I. 7.01C reads as follows:

Merely being present at the scene of a crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that the defendant was an accessory before the fact to that crime. The State must prove that the defendant knowingly associated himself with the crime in some way as a participant—someone who wanted the crime to be committed—and not as a mere spectator.

Omission of that particular instruction in any given case may or may not be error. The same cannot be said for W.Cr.P.J.I. 7.01B, which is the elements instruction for the crime of accessory before the fact:

The elements of being an Accessory Before the Fact to the Crime of _____ are:

1. On or about the __ day of ·_____, [200__]

2. In _____ County, Wyoming

3. The Defendant, _____

4. Knowingly [aided or abetted another person in the {commission of} {attempt to commit} the crime of _____] [counseled, encouraged, hired, commanded or procured the crime of _____ to be committed by another person], and

5. That other person [committed] [attempted to commit] the crime of _____.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

Without the giving of this instruction, or something akin to it, for each of the three non-conspiracy crimes, we cannot be sure that the jury submitted facts tending to prove the appellant was an accessory before the fact to the "beyond a reasonable doubt" test.[3] We would never countenance the failure to give an elements instruction with any other crime, and we should not countenance it with the crime of aiding and abetting.

[¶ 56] I would reverse.

**3.** *See Virgilio v. State,* 834 P.2d 1125, 1128 (Wyo. 1992) and *Kavanaugh v. State,* 769 P.2d 908, 911 (Wyo.1989) for examples of accessory before the fact elements instructions that were given to the jury.