2007 WY 59

**Brian Dewayne RAWLE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 05–164.

Supreme Court of Wyoming.

April 11, 2007.

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Diane Courselle, Director DAP; Meghan Reed and Cherie Trine, Student Interns DAP. Argument by Ms. Courselle.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Robert A. Nicholas, Senior Assistant Attorney General. Argument by Mr. Nicholas.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Mr. Rawle appeals his convictions for felony murder, attempted aggravated robbery, and conspiracy to commit aggravated robbery. He contends he was convicted of felony murder as an aider and abettor, but the information charging him with felony murder and the elements instruction required the State to prove that he actually killed the victim. Additionally, Mr. Rawle

claims that instructional error confused the jury and that the evidence was insufficient to support his convictions. We affirm.

### ISSUES

[¶2] The State phrases the issues as:

I. Was there a fatal variance between the pleadings and either the jury instructions or the facts proved at trial?

II. Did the jury instructions accurately set out the law of felony murder, and did the instructions prejudice Appellant?

III. Was there sufficient evidence to convict Appellant?

### FACTS

[¶3] In early February of 2004, Mr. Rawle departed from South Dakota with his girlfriend, Eyvette Talley, and her three children, along with Ms. Talley's brother, Marco Lemus, his wife, Tiffany Lemus, and their three children. The group traveled in a 1989 Cadillac and headed to Arizona. They passed through Wyoming and planned a stop in Kemmerer, Wyoming where Mr. Rawle had a connection with a drug dealer that he had established when he was previously employed in the area. At some point during their trip, Mr. Lemus, Ms. Talley, and Mr. Rawle devised a plan to rob the drug dealer, Manuel Leon–Leyva.

[¶4] When they arrived in Kemmerer, Mr. Rawle contacted Mr. Leon–Leyva and requested that they meet for a drug transaction at a local grocery store. Mr. Lemus, Ms. Talley, and Mr. Rawle armed themselves with steak knives. They left Mrs. Lemus and the children in the Cadillac to meet Mr. Leon–Leyva, who arrived at the meeting location driving his vehicle. Mr. Leon–Leyva was then robbed and stabbed to death in his vehicle.

[¶5] Mr. Rawle drove Mr. Leon–Leyva's vehicle, followed by the Cadillac driven by Ms. Talley, to a remote location. The three perpetrators burned the victim's vehicle and body in an attempt to destroy the evidence of their crimes. The charred vehicle and remains were later discovered and an investigation ensued.

[¶6] Mr. Rawle was eventually charged with three felony counts: Count I—felony murder in violation of Wyo. Stat. Ann. § 6–2–101(a) (LexisNexis 2003); Count II—attempted aggravated robbery in violation of Wyo. Stat. Ann. §§ 6–1–301 and 6–2–401(a)(c)(ii) (LexisNexis 2003); and Count III—conspiracy to commit aggravated robbery in violation of Wyo. Stat. Ann. §§ 6–1–303(a) and 6–2–401(a)(c)(ii) (LexisNexis 2003).

[¶7] A jury trial was held. Mr. Rawle testified and admitted to arranging the meeting with Mr. Leon–Leyva and being with Marco Lemus and Eyvette Talley at the time of the murder. He denied that he had formed any agreement or intent to commit a robbery. The jury returned a guilty verdict on all three charges. Mr. Rawle was sentenced to life imprisonment on Counts I and II, which merged for sentencing, and to a concurrent prison term of ten to fifteen years on Count III. This appeal followed.

### DISCUSSION

#### Fatal Variance

[¶8] For Count I, felony murder, the State charged Mr. Rawle as follows:

On or about the 6th or 7th day of February, 2004, in the County of Lincoln, State of Wyoming, the said BRIAN DEWAYNE RAWLE did kill a human being while attempting to commit the crime of aggravated robbery, in violation of § 6–2–101(a) W.S. (2003) and contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Wyoming.

The information tracked the language of the first degree murder statute, which provides:

(a) **Whoever** purposely and with premeditated malice, or **in the perpetration of,** or attempt to perpetrate, any sexual assault, arson, **robbery,** burglary, escape, resisting arrest, kidnapping or abuse of a child under the age of sixteen (16) years, **kills any human being is guilty of murder in the first degree.**

Wyo. Stat. Ann. § 6–2–101 (LexisNexis 2003) (emphasis added). The information did not

contain any reference to aiding and abetting or acting as an accessory before the fact.

[¶ 9] Prior to arraignment, the State submitted its "Statement of the Elements" which stated the following for Count I:

### FELONY MURDER,

§ 6–2–101(a) W.S. (2003)

1. The defendant Brian Dewayne Rawle,
2. On or about the 6th or 7th day of February, 2004,
3. In the County of Lincoln, State of Wyoming,
4. Did kill a human being,
5. While attempting to commit the crime of aggravated robbery.

[¶ 10] Based upon these pleadings, Mr. Rawle contends that the State gave notice of its intent to prove that he had inflicted the fatal stab wounds that killed Mr. Leon–Leyva. Instead, at trial, the State relied upon an aiding and abetting theory to establish the elements of felony murder. Defense counsel moved for a judgment of acquittal at the close of the State's case, arguing that he had not had prior notice of the State's theory. In response, the State argued that it was not required to specifically charge Mr. Rawle as an aider and abettor, citing our decision in *Jansen v. State*, 892 P.2d 1131 (Wyo.1995). The district court denied the motion.[1]

[¶ 11] On appeal, Mr. Rawle asserts that the State's surprise theory at trial substantially impaired his ability to defend against the felony murder charge. He claims that the State's proof of felony murder fatally varied from the allegations contained in the information, requiring reversal of his conviction. We have previously identified the principles applicable when reviewing a fatal variance claim:

> [A]n information is sufficient if it: 1) contains the elements of the offense charged; 2) fairly informs a defendant of the charge against which he must defend; and 3) enables a defendant to plead an acquittal or

---

1. Mr. Rawle did not renew his motion at the close of evidence. He acknowledges that his failure to do so and proceeding to present evidence waived subsequent challenge to that ruling

conviction in bar of future prosecutions for the same offense. *Id.* at 1351 (citing *Stewart v. State*, 724 P.2d 439, 440–41 (Wyo. 1986)). A variance arises when the evidence presented at trial establishes facts that are different from those alleged in the indictment. *Capshaw v. State*, 11 P.3d 905, 910 (Wyo.2000) (quoting *Dunn v. United States*, 442 U.S. 100, 105, 99 S.Ct. 2190, 2193–94, 60 L.Ed.2d 743 (1979); and *United States v. Powell*, 982 F.2d 1422, 1431 (10th Cir.1992)). Similarly, a shift in the government's theory from the one set out in the indictment to that presented at trial may also constitute a prejudicial variance. *United States v. McClatchey*, 217 F.3d 823, 831 (10th Cir.2000). We will not reverse unless the variance affects the defendant's substantial rights. *Capshaw*, 11 P.3d at 910. Even in cases where an appellate court determines the existence of a variance, such a variance

> "is not fatal unless the defendant could not have anticipated from the indictment what evidence would be presented at trial or unless the conviction based on an indictment would not bar a subsequent prosecution." 3 Charles Alan Wright, Federal Practice and Procedure § 516 at 27 (2d ed.1982); *see* [*Unites States v.*] *Stoner*, 98 F.3d [527] at 536 [ (10th Cir. 1996) ].

*Id.*

*Estrada–Sanchez v. State*, 2003 WY 45, ¶ 13, 66 P.3d 703, 708–09 (Wyo.2003).

[¶ 12] Mr. Rawle claims that the variation stems from the State's failure to phrase its allegations in the information in terms of the aiding and abetting statute, which provides:

### § 6–1–201. Accessory before the fact.

(a) A person who knowingly aids or abets in the commission of a felony, or who counsels, encourages, hires, commands or procures a felony to be committed, is an accessory before the fact.

(b) An accessory before the fact:

under *Hodges v. State*, 904 P.2d 334, 339 (Wyo. 1995). *See also Butcher v. State*, 2005 WY 146, ¶ 12, 123 P.3d 543, 548 (Wyo.2005); *Robinson v. State*, 11 P.3d 361, 368 (Wyo.2000).

(i) **May be indicted, informed against, tried and convicted as if he were a principal;**

(ii) May be indicted, informed against, tried and convicted either before or after and whether or not the principal offender is indicted, informed against, tried or convicted; and

(iii) Upon conviction, is subject to the same punishment and penalties as are prescribed by law for the punishment of the principal.

Wyo. Stat. Ann. § 6–1–201 (LexisNexis 2003) (emphasis added). However, Wyoming law does not require that this statute be identified in the charging document. As we stated in *Black:*

[S]ince § 6–1–201 provides that an aider and abettor is to be informed against, tried, and convicted in the same manner as if he were a principal, no distinction is made between an aider and abettor and principal. Hence, an aider and abettor is guilty of the principal crime. Proof of participation in either capacity is sufficient to convict a defendant as a principal, and it is not necessary that the information refer to the aiding and abetting statute. *Hawkes v. State*, 626 P.2d at 1043; *Neilson v. State*, 599 P.2d at 1335.

*Black v. State*, 2002 WY 72, ¶ 29, 46 P.3d 298, 303–04 (Wyo.2002).

▆▆ [¶ 13] While reference to § 6–1–201 in the charging document may be the better practice, the failure to specify that Mr. Rawle was an aider and abettor to felony murder did not render the information insufficient or restrict the State to proving that he had been the principal in the murder. Accomplice liability for felony murder is unique in character. "Felony-murder is an unusual offense in that the death arising out of the robbery is purely an incident of the basic offense." *Bouwkamp v. State*, 833 P.2d 486, 491 (Wyo.1992). A killing occurring in a continuous transaction involving a robbery is a classic example of felony murder. *Jansen*, 892 P.2d at 1137.

[¶ 14] Contrary to Mr. Rawle's assertion that he had no idea that he was being prosecuted as an aider and abettor, other information in the record reveals that indeed, defense counsel had received notice that the State viewed the crimes charged as joint endeavors. The affidavit of probable cause identifies all three perpetrators, describes the eyewitness testimony of Mrs. Lemus, and details the incriminating statements Mr. Lemus gave to the police. Defense counsel obtained ample discovery from the State, including witness statements. If any doubt remained concerning the nature of the State's case, it was resolved several weeks before trial when the State submitted its proposed jury instructions, including an aiding and abetting instruction. Mr. Rawle never requested a bill of particulars and, even after receiving the State's proposed jury instructions, did not request a continuance or any clarification from the court or the prosecution.

[¶ 15] In arguing the motion for acquittal, defense counsel admitted that the State's proposed jury instructions did indicate reliance upon an aiding and abetting theory at trial. The district court found defense counsel's expression of surprise that the State was relying on a joint endeavor theory unconvincing, in part because the nature of the case was readily apparent by the charging of Mr. Lemus and Ms. Talley with felony murder as well. In candor, defense counsel affirmed that he had been aware all along that all three had been charged with felony murder. In denying the motion, the district court acknowledged that the information could have been worded differently but agreed with the prosecutor that they were all aware that the case was implicitly a joint endeavor case. Based upon this record, we have difficulty concluding that Mr. Rawle could not have anticipated the State's case against him.

### *Jury Instructions*

[¶ 16] In his second claim of error, Mr. Rawle challenges the felony murder instructions given to the jury. He focuses upon the following three instructions:

# 19

The elements of the crime of Felony Murder, as charged in the case, are:

1. On or about the 6th or 7th day of February, 2004;

2. In Lincoln County, Wyoming;

3. The Defendant, Mr. Brian Dewayne Rawle;

4. Did kill Manuel Leon–Leyva[;]

5. While attempting to commit the crime of aggravated robbery.

. . .

#26

If two (2) or more persons are jointly engaged in the perpetration of or an attempt to perpetrate a robbery, and a human being is killed during its commission by any one of the persons so jointly engaged, then each of the offenders are equally guilty of the homicide.

#27 (Defendant's contentions)

It is the contention of the defense that the killing of Manuel Leon–Leyva occurred as a result of the actions of Marco Lemus. Therefore[,] unless the State proves beyond a reasonable doubt that Brian Dewayne Rawle killed Manuel Leon–Leyva in the commission of an aggravated robbery[,] you may not convict him of Felony Murder.

Further[,] the defense contends that Mr. Rawle had no knowledge and did not participate in a conspiracy or an attempt to commit an aggravated robbery if indeed such conspiracy or an attempt even occurred.

Instructions 19 and 26 were proposed by the State several weeks before the trial. Also prior to trial, Mr. Rawle proposed Instruction 27 as a defense theory of the case instruction. Other than Instruction 27, the defense did not submit an instruction pertaining to the elements of felony murder, but did so for the other two charges.[2]

■ [¶ 17] We afford the trial court significant deference when reviewing claims of error involving jury instructions. *Luedtke v. State*, 2005 WY 98, ¶ 28, 117 P.3d 1227, 1232 (Wyo.2005). We have previously noted:

A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found. Instructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation. *Black v. State*, 2002 WY 72, ¶ 5, 46 P.3d 298, ¶ 5 (Wyo.2002) (citing *Ogden v. State*, 2001 WY 109, ¶ 8, 34 P.3d 271, ¶ 8 (Wyo.2001); *Coburn v. State*, 2001 WY 30, ¶ 9, 20 P.3d 518, ¶ 9 (Wyo.2001); *Merchant v. State*, 4 P.3d 184, 190 (Wyo. 2000)). Prejudice will be determined to exist only where an appellant demonstrates that the instruction given confused or misled the jury with respect to the proper principles of law. *Black v. State*, at ¶ 16 (citing *Lane v. State*, 12 P.3d 1057, 1061 (Wyo.2000); *Wilson v. State*, 14 P.3d 912, 916 (Wyo.2000)).

*Id.*, quoting *Giles v. State*, 2004 WY 101, ¶ 14, 96 P.3d 1027, 1031 (Wyo.2004).

■ [¶ 18] Mr. Rawle contends that Instruction 26 was inconsistent with the other instructions because it eliminated a required element of felony murder as set forth in Instruction 19—that he killed Mr. Leon–Leyva. We disagree. Instruction 26 was a proper statement of the law regarding accomplice liability for felony murder; it is nearly verbatim the instruction approved in *Jansen*. *See also Jones v. State*, 568 P.2d 837, 846 (Wyo.1977). Instruction 26 informed the jury how the killing element of Instruction 19 could be satisfied. Mr. Rawle also asserts that "jointly engaged" should have been defined for the jury. However, we do not find these words to have a technical meaning and find a reasonable jury capable of understanding the language of the instruction in the absence of further definition.

[¶ 19] To further support his contention that the instructions were confusing, Mr. Rawle directs us to the jury's note during deliberations requesting a definition for felo-

---

2. The defense's proposed instructions were accompanied by a cover sheet listing a description of the instructions requested, including proposed instruction "L" described as "Elements of Felony Murder." However, the instructions were not separately labeled with letters and the defense's proposed instruction setting forth the elements of felony murder does not appear in the record on appeal.

**1030**

ny murder.[3] He does not explain how the jury's request supports an inference that it was having difficulty reconciling Instructions 19, 26, and 27, and we are not convinced that such was the case. After discussing the matter with counsel in chambers and reaching a consensus concerning an appropriate response, the district court advised the jury to reread the instructions provided. The jury then continued its deliberations and returned its verdict without further inquiries. We conclude that when reading the instructions as a whole, the jury was properly and adequately instructed regarding felony murder. We do not have "doubt as to under what circumstances the crime can be found to have been committed." *Miller v. State*, 904 P.2d 344, 348 (Wyo.1995).

[¶ 20] If any confusion arose, it likely stemmed from Instruction 27, which reiterated only one of the elements from Instruction 19 and did not state a cognizable defense under Wyoming law. Instruction 27 is similar to one which we rejected in *Jansen* that was "designed to insulate [the defendant] from culpability" by arguing that his cohort actually killed the victim. 892 P.2d at 1140. We held a defendant is not entitled to such an instruction because "that approach has no place in the felony murder doctrine." *Id.* Accordingly, the district court could have properly rejected Instruction 27, but having given it, we find the error more prejudicial to the State than to Mr. Rawle. Pursuant to the doctrine of invited error, this instruction requested by the defense cannot provide grounds for reversal unless it was "necessarily prejudicial," which has not been demonstrated. *Bromley v. State*, 2007 WY 20, ¶ 35, 150 P.3d 1202, 1213 (Wyo.2007); *Butcher v. State*, 2005 WY 146, ¶ 29, 123 P.3d 543, 552 (Wyo.2005).

### Sufficiency of the Evidence

[¶ 21] In considering Mr. Rawle's challenge to the sufficiency of the evidence, we view the evidence, and any applicable inferences based on the evidence, in a light most favorable to the State. *Cazier v. State*, 2006 WY 153, ¶ 46, 148 P.3d 23, 37 (Wyo. 2006). In conducting such a review, we do not substitute our judgment for that of the jury; rather, we determine whether a quorum of reasonable and rational individuals would, or even could, have found the essential elements of each of the crimes were proven beyond a reasonable doubt. *Id.*

[¶ 22] Mr. Rawle asserts that the State did not present sufficient evidence to allow the jury to conclude that he had any agreement concerning a robbery or had any intent to steal. Therefore, he claims that reversal of all three of his convictions is required. We disagree, finding that sufficient evidence supported each of the convictions.

[¶ 23] The State presented testimony from two eyewitnesses, Tiffany Lemus and FT, the teenage daughter of Mr. Rawle's girlfriend. Both of these witnesses discussed the conduct of Mr. Rawle and his co-conspirators before, during, and after the robbery and murder. We have recognized that "although a defendant's presence at the time and place of the crime does not establish guilt as an aider, abettor, or principal, an intent to engage in the criminal venture may be shown by the relationship of the parties and by their conduct before and after the offense." *Black*, ¶ 10, 46 P.3d at 301.

[¶ 24] From the eyewitness testimony, the jury heard how the four adult drug users freely talked about and carried out their drug related activities in front of the children on their journey. Mr. Lemus, Ms. Talley, and Mr. Rawle also planned and discussed the robbery in front of the children. They carried out their plan, and Mr. Leon–Leyva was stabbed to death in a vehicle parked in front of the Cadillac, with the children and Mrs. Lemus in it. FT saw the body, the murder weapons, and blood on Ms. Talley and Mr. Rawle, and watched them dispose of evidence afterward. Both FT and Mrs. Lemus testified concerning Mr. Rawle's active role in driving Mr. Leon–Leyva's vehicle to a remote location and burning it with the dead body inside. A substantial portion of Mr.

---

**3.** The note does not appear in the record on appeal, but a copy was appended to Mr. Rawle's opening brief.

Rawle's testimony corroborated what was described by FT and Mrs. Lemus.

[¶ 25] True, FT was the only witness to provide testimony of the conspiracy. Mr. Rawle claims that her descriptions of the conversations she overheard were too vague, and that she failed to attribute specific statements directly to him. For example, she testified that "they all talked about the same thing, so they all pretty much said the same thing: knock him out and take the drugs. Well, I don't know if they were going to knock him out, but rough him up a little bit and take the drugs, pretty much knock him out." She did, however, identify Mr. Rawle's specific role in the plan to rob his drug source. He would "talk to the guy, like make it okay and everything." Affording every favorable inference to the State, FT's testimony was sufficient to establish the conspiracy, especially when considered with the other evidence of the behavior of the co-conspirators immediately before and following the robbery and murder.

[¶ 26] Furthermore, Mr. Rawle admitted that he was well aware of the intentions of Mr. Lemus and Ms. Talley to rob Mr. Leon–Leyva using steak knives. It was undisputed that armed with this knowledge, he contacted Mr. Leon–Leyva and arranged the meeting anyway. Although Mr. Rawle wants to characterize his actions as innocent, the jury could easily infer that he was fulfilling his role in the criminal scheme to rob Mr. Leon–Leyva.

[¶ 27] Following the murder, Mr. Rawle actively assisted in burning the victim's vehicle and body, and disposing of other evidence. Although he claims to have acted under threats from Mr. Lemus, the testimony from Mrs. Lemus and FT did not support reluctance or duress. The jury was allowed to weigh the evidence and could have easily concluded that Mr. Rawle's undisputed participation in destroying evidence was corroborative of his involvement in the crime. Additionally, the eyewitnesses described several items of property taken from the victim that were brought back to the Cadillac after the murder. We have also recognized that possession of stolen items is strongly corroborative of an intent to steal. *Jansen,* 892

P.2d at 1137; *Cowell v. State,* 719 P.2d 211, 215 (Wyo.1986).

[¶ 28] Nevertheless, Mr. Rawle states that his "actions, conduct, words and the circumstances of the case could lead to one of two contradictory reasonable inferences: (1) that he may have had the required intent to rob Mr. Leon–Leyva; or the equally reasonable inference that (2) he wanted to buy drugs from Mr. Leon–Leyva and had no intention of robbing him." He contends that because the only evidence of his intent was circumstantial, that the State's proof had to be "inconsistent with any other rational conclusion" in reliance upon *Mulligan v. State,* 513 P.2d 180, 181 (Wyo.1973). *Mulligan* has long been overruled on this point, in favor of our current standards for reviewing the sufficiency of the evidence supporting a verdict, which do not distinguish between direct and circumstantial evidence. *Blakely v. State,* 542 P.2d 857, 863 (Wyo.1975). The fact that Mr. Rawle's testimony provided an alternative explanation for his behavior is irrelevant. Viewed in a light most favorable to the State, the evidence supported the jury's finding of guilt.

[¶ 29] Affirmed.